## CHARLOTTE I. KELLERMAN v. CITY OF ST. PAUL.[1]

December 12, 1941.

No. 32,845.

*Harry W. Oehler,* Corporation Counsel, and *Frank B. Daugherty* and *Francis M. Smith,* Assistant Corporation Counsels, for relator.

*Arthur A. Stewart,* for respondent.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission awarding compensation to the dependents of William F. Kellerman, a former employe of the city of St. Paul.

[1]Reported in 1 N. W. (2d) 378.

Kellerman, a fireman, responded to a call on the morning of September 30, 1939. He assisted other members of the department in extinguishing the fire and afterward cleaning up the basement of the premises. While cleaning out a drain he felt a severe pain in his chest. An ambulance was called, and Kellerman was taken to a hospital, where he died a few minutes after his arrival. Petitioner, his widow, filed a claim in behalf of herself and two minor children alleging that Kellerman contracted coronary sclerosis while on active duty and died from the effects of the disease. The city in its answer denied that the condition causing employe's death was in any way related to his duties as a fireman. It also denied liability on the ground that L. 1939, c. 306, Mason St. 1940 Supp. § 4327(9), "pertaining to industrial disease, and particularly coronary sclerosis, is unconstitutional by reason of same being class legislation." The referee found for petitioner, as did the commission on appeal, one member dissenting.

It is here urged (1) that the disease which caused Kellerman's death was not contracted within 12 months of disablement as required by Mason St. 1927, § 4327(3) ; (2) that it was contracted prior to the amendment of 1939 (L. 1939, c. 306), making coronary sclerosis an occupational disease; (3) that it was not due to the nature of decedent's employment and was not contracted therein; and (4) that the 1939 amendment as applied to this case is unconstitutional.

■ The workmen's compensation act provides that disability resulting from an occupational disease is not compensable unless the disease is contracted "within the twelve months previous to the date of disablement" and unless the disease is not contracted "prior to the date on which this act takes effect," which in the case of the amendment making coronary sclerosis an occupational disease was April 21, 1939. Mason St. 1927, § 4327(3, 11). Petitioner concedes that the "original commencement of the condition probably occurred more than a year prior to Kellerman's death," but contends that the disease was not "contracted" within the meaning of the law until it manifested itself or interfered with

the bodily functions of decedent. The medical testimony was not in appreciable conflict. Dr. George Fahr testified that coronary sclerosis "is a hardening of the arteries which supply the blood for the nourishment of the heart muscle. It consists largely of an infiltration of cholesterol into the middle or inner coat of those arteries whereby a thickening of that coat takes place which ultimately narrows down the bore of those vessels so that a smaller supply of blood and a continuously decreasing supply of blood, as years go on, is carried to the heart muscles, so that ultimately the heart muscles fail because of too small a supply of blood to them." All the expert witnesses agreed that many years elapse between the inception of the sclerotic condition and resultant death. It would therefore be highly improbable for a fireman to die or become otherwise disabled within one year after the origin of sclerosis in the coronary arteries. Thus the anomalous situation is presented that, while one subsection of the statute makes coronary sclerosis an occupational disease for firemen, another renders it impossible for firemen to receive its benefits.

The compensation act is a remedial statute and must be liberally construed to effectuate its purpose. State ex rel. Virginia & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211. Although it is true that if the meaning of a statute is plain there is ordinarily no room for construction, Clementson v. Minnesota Tribune Co. 45 Minn. 303, 47 N. W. 781, it is equally true that the legislature should not be taken to intend absurd or contradictory consequences. The rule which the Minnesota cases lay down is perhaps best expressed in Taylor v. Taylor, 10 Minn. 81, 93 (107), wherein the court said:

"When the literal interpretation of an instrument involves any absurdity, contradiction, injustice, or extreme hardship, the courts may deviate a little from the received sense and literal meaning of the words, and interpret the instrument in accordance with what may appear to have been the intention and meaning of its framers, and the real intention, when accurately ascertained, must in all cases prevail over the literal sense of the terms."

See, also, Clementson v. Minnesota Tribune Co. *supra;* Higgins v. Berg, 74 Minn. 11, 14, 76 N. W. 788, 42 L. R. A. 245; M. St. P. & S. S. M. Ry. Co. v. Pierce, 103 Minn. 504, 508, 115 N. W. 649; State ex rel. Kirk v. Remmey, 170 Minn. 293, 212 N. W. 445.

The general nature of coronary sclerosis must be presumed to have been known to the legislature. It does not, the medical witnesses agree, impair the normal functioning of a man until it causes a cardiac insufficiency. Dr. Harvey Beek, a witness for petitioner, testified that the mere presence of coronary sclerosis in the arteries, not yet affecting the body functions, should not be called a disease; and that the condition should not be so characterized until it manifests itself in one of its forms, "such as pain, decompensated heart, or acute attack or an occlusion." Dr. H. L. Ulrich, testifying for relator, also questioned whether the condition should be called a disease. In view of the nature of coronary sclerosis, the doubt as to the stage at which it should be characterized as a disease, and especially the negative results flowing from any other construction, we conclude, as did the commission, that coronary sclerosis is "contracted" within the meaning of the statute when it first manifests itself so as to interfere with bodily functions. That occurred in this case only shortly before Kellerman's death. The following cases, although not precisely in point, bear out the reasonableness of such construction. Cohen v. North American L. & C. Co. 150 Minn. 507, 185 N. W. 939; Smith v. Benefit Assn. of Ry. Employees, 187 Minn. 202, 244 N. W. 817. Palumbo v. Metropolitan L. Ins. Co. 296 Mass. 358, 5 N. E. (2d) 836, relied upon by relator, is *contra* to the above Minnesota cases.

■ The compensation act requires that the disease be due to the nature of the employment and contracted therein. Mason St. 1927, § 4327(2, 3). The medical experts were in complete accord that the cause of coronary sclerosis is unknown, and that the only practical way to determine whether it is due to the nature of the employment, in view of the present status of medical knowledge on the subject, would be to test its incidence in different occupa-

tional groups. From there on, however, the testimony was in conflict. The medical witnesses for relator, Doctors Fahr, Clawson, and Ulrich, all testified in substance that coronary sclerosis is not more prevalent among firemen than among other occupations and that Kellerman's work had no effect upon his coronary sclerosis. Doctors Sprafka and Beek, for petitioner, in answer to hypothetical questions, testified that the work of a fireman would contribute to the development of the disease, and that Kellerman's work contributed to its development in his case. The testimony of petitioner's witnesses was supported by an article by Dr. Harry L. Smith of the Mayo Clinic, introduced in evidence, which concluded that occupation does influence the incidence of coronary sclerosis. The testimony here was such as to raise a fact question, and therefore the commission's finding must be affirmed.

■ Relator contends that the 1939 amendment as applied to this case is unconstitutional in that it violates the equal protection clauses of the federal and state constitutions and the prohibition against special legislation found in the state constitution. Legislation in its very nature involves classification, and a statute will be held unconstitutional on that ground only where the class it necessarily establishes has no substantial basis in fact. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; Lavallee v. St. P. M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974. Much is left to the sound discretion of the legislature. Cameron v. C. M. & St. P. Ry. Co. 63 Minn. 384, 388, 65 N. W. 652, 31 L. R. A. 553; Lavallee v. St. P. M. & M. Ry. Co. *supra*. The apparent high percentage of occurrence of coronary sclerosis among firemen demonstrates that the legislature was not arbitrary in providing for them as a class. Relator asserts that other occupations were shown to be susceptible to coronary sclerosis. The legislature "is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may 'proceed cautiously, step by step,' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the

prohibition 'should be couched in all-embracing terms.' " State v. Fairmont Creamery Co. 162 Minn. 146, 149, 202 N. W. 714, 716, 42 A. L. R. 548. The statute is undoubtedly constitutional.

The order must be affirmed.

Respondent is allowed $100 as attorney's fees.