Lena M. HYATT, Appellant,

v.

ANOKA POLICE DEPARTMENT,
et al., Respondents.

No. A03–1707.

Supreme Court of Minnesota.

Feb. 10, 2005.

Randall J. Fuller, William J. Marshall, Babcock, Neilson, Mannella, Klint, Anoka, MN, for Appellant's.

Jon K. Iverson, Paul D. Reuvers, Iverson Reuvers, LLC, Bloomington, MN, for Respondent's.

OPINION

HANSON, Justice.

Appellant Lena Hyatt sued the City of Anoka and its police department (collec-

tively, the "City") after she was injured by a police dog during the attempted arrest of her husband. Hyatt's complaint alleged liability solely on the basis of Minn.Stat. § 347.22 (2004) (the dog bite statute), which holds a dog owner strictly liable for injuries caused by the dog so long as the dog was not provoked and the victim was acting peaceably in a place where she had a lawful right to be. The City moved for summary judgment asserting that the dog bite statute did not apply to police dogs and, in the alternative, that the City was immune and that the police department is not a legal entity subject to suit. The district court denied the City's motion, but the court of appeals reversed, holding that it would be "absurd" to apply the dog bite statute to police dogs because police officers are authorized by statute to use reasonable force. *Hyatt v. Anoka Police Dep't*, 680 N.W.2d 115, 119–20 (Minn.App. 2004). The court of appeals declined to address the City's immunity claims. *Id.* at 120. We reverse the decision of the court of appeals on the dog bite statute and remand to the court of appeals with directions to consider the City's immunity claims and the propriety of naming the police department as a defendant.

At approximately 1:30 a.m. on May 21, 2002, four law enforcement officers arrived at a residence in St. Francis, Minnesota, to execute arrest warrants for Andrew Hyatt, who had been charged with a controlled substance crime, fleeing a police officer, and driving after revocation. The homeowner told the officers that Andrew Hyatt and his wife, appellant Lena Hyatt, were living in a two-story red barn behind the residence. After entering the barn through an unlocked door, the officers heard movement on the barn's second level. Sheriff's Deputy Paul Lenzmeier called for Andrew Hyatt to come out. Af-

ter receiving no response, Lenzmeier and Deputy Todd Diegnau went upstairs and observed two people in bed, covered with a blanket. Lenzmeier called out again and noticed that the male, whom police later identified to be Andrew Hyatt, was awake. After Andrew Hyatt ignored Lenzmeier's order to show his hands, Lenzmeier pulled down the covers in an effort to reveal any weapons. The other person in bed was Lena Hyatt.

According to deposition testimony and the deputies' departmental reports, Andrew Hyatt jumped from the bed, yelled something similar to "Go ahead, just shoot me, shoot me," and lunged toward the deputies. Andrew Hyatt struck Diegnau, and Lenzmeier called downstairs for assistance from Anoka Police Officer Mark Yates, who came upstairs with his police dog, Chips, on a leash. Yates saw Diegnau's bloodied face and Andrew Hyatt standing behind Lena Hyatt as he yelled, "Shoot me, shoot me." Lenzmeier believed that Lena Hyatt might have been "act[ing] as a shield for her husband."

When Andrew Hyatt ran toward the back of the room, Yates released Chips. Instead of pursuing Andrew Hyatt, Chips apprehended Lena Hyatt, taking her to the ground and performing a "bite and hold" on her left leg and right arm. With the animal holding Lena Hyatt, Yates pursued Andrew Hyatt, who fled through a second-story window. When Yates later re-entered the room, he released Chips from Lena Hyatt and instructed Lenzmeier to handcuff and arrest her on suspicion of obstruction of legal process. Lena Hyatt was taken by ambulance to a Coon Rapids hospital and treated for a 2–inch laceration on her right elbow and a 5–inch laceration on her left knee.

Hyatt sued the City, seeking compensation for medical costs and pain. Her com-

plaint alleged liability on the sole basis of the dog bite statute, which reads:

> If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.

Minn.Stat. § 347.22.

The City moved for summary judgment, arguing that the dog bite statute does not apply to police dogs. In the alternative, the City argued that it was entitled to statutory and vicarious official immunity. The City also argued that the police department was not a legal entity and thus was improperly joined as a defendant. The district court denied the City's motion, ruling that the dog bite statute applies to municipal owners of police dogs because the statute does not explicitly exempt police dogs. The district court also ruled that because the specific use of a police dog was "operational," the City was not entitled to immunity. The court did not address the question of the propriety of the joinder of the police department as a defendant.

Before the court of appeals, the City argued that applying the dog bite statute to municipal owners of police dogs "clearly produces an absurd result." It relied on the guideline for statutory construction contained in Minn.Stat. § 645.17(1) (2004)

which provides that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." A divided court of appeals agreed and ordered summary judgment for the City. *Hyatt,* 680 N.W.2d at 119–20. The court did not address the immunity or proper party issues because they were moot. *Id.* at 120. We granted Hyatt's petition for review on whether the dog bite statute applies to municipal owners of police dogs.

■ On appeal from summary judgment, we review whether the district court erred in applying the law and whether there are any genuine issues of material fact. *Schons v. State Farm Mut. Auto. Ins. Co.,* 621 N.W.2d 743, 745 (Minn.2001). Statutory interpretation is a question of law that we review de novo. *Educ. Minnesota–Chisholm v. Indep. ch. Dist. No. 695,* 662 N.W.2d 139, 143 (Minn.2003).

I.

■ To determine whether the dog bite statute applies to municipal owners of police dogs, we begin our analysis by considering the plain meaning of the words used in the statute. That statute imposes liability on the "owner" of a dog that injures or attacks a person who did not provoke the animal and who acted peaceably in a place where she had a right to be. Minn.Stat. § 347.22. The term "owner" includes "any person" harboring or keeping a dog. *Id.* The word "any" is given broad application in statutes, regardless of whether we consider the result reasonable.[1] And the word "person" may be applied to include "bodies politic," such as

---

1. For example, in *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 494 (Minn.1997), we held that Minn.Stat. § 169.685 (1996), which at the time barred seat-belt evidence in *"any* litigation involving personal injuries or prop-

erty damage," applied to bar evidence about the seat belt in a crashworthiness action that alleged that the seat belt was defective. (Emphasis added.)

municipalities. Minn.Stat. § 645.44, subd. 7 (2004). Section 347.22 anticipates potential ambiguities by defining "dog" as an animal "of the canine species" and a dog "owner" as "any person harboring or keeping a dog." Thus, we conclude that the plain meaning of the words used in the dog bite statute includes a municipal owner of a police dog.

■ The court of appeals looked beyond the plain meaning of the dog bite statute to ascertain the legislature's intent. It relied on the guideline for statutory construction contained in Minn.Stat. § 645.17(1) (2004), which states that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." The court held that it would be "absurd" to apply the dog bite statute to police dogs because police officers are statutorily authorized to use "reasonable force" in certain circumstances. *Hyatt*, 680 N.W.2d at 119. As applicable here, the "reasonable force" authorization is found in section 609.06, subdivision 1 (the reasonable force statute):

> Except as otherwise provided in subdivision 2,[2] reasonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist:
>
> (1) when used by a public officer or one assisting a public officer under the public officer's direction:
>
> (a) in effecting a lawful arrest; or
>
> * * * *

Minn.Stat. § 609.06, subd. 1(a) (2004).[3]

We recently declined the invitation to disregard the plain meaning of the words of a statute where it was argued that the plain meaning would produce an absurd result. We stated that "where the intention of the legislature is clearly manifested by plain and unambiguous language, we have neither the need nor the permission to engage in statutory interpretation." *Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities*, 659 N.W.2d 755, 760 (Minn. 2003). We concluded that we could disregard a statute's plain meaning only in rare cases where the plain meaning "utterly confounds a clear legislative purpose." *Id.* at 761–72.[4]

*Wegener v. Commissioner of Revenue*, 505 N.W.2d 612 (Minn.1993), is one such

---

**2.** Subdivision 2 of section 609.06 prohibits the use of deadly force against peace officers "who have announced their presence and are performing official duties at a location where a person is committing a crime or an act that would be a crime if committed by an adult." Minn.Stat. § 609.06, subd. 2 (2004).

**3.** Although section 609.06 is in the Criminal Code, we apply it in civil actions to avoid "unfair and inequitable results" likely to occur if civil and criminal actions had conflicting standards. *Schumann v. McGinn,* 307 Minn. 446, 467–68, 240 N.W.2d 525, 537 (1976). The Eighth Circuit has concluded that a police dog's "bite and hold" is a use of nondeadly force. *Kuha v. City of Minnetonka,* 365 F.3d 590, 598 (8th Cir.2003). A police officer's use of *deadly* force is governed not by

section 609.06, but by Minn.Stat. § 609.066 (2004).

**4.** In *Mutual Service Casualty Insurance Co. v. League of Minnesota Cities,* we examined whether a marked patrol car is a "motor vehicle" subject to Minnesota's No–Fault Automobile Insurance Act. Because the Act defined "motor vehicles" as those subject to state registration under chapter 168 of Minnesota Statutes, which unambiguously excluded marked "police patrols," we refused to look beyond the plain statutory language and held that the Act did not apply to a marked patrol car. *Mut. Serv. Cas. Ins. Co.,* 659 N.W.2d at 757, 758–60 (referencing Minn.Stat. § 168.012, subd. 1(b) (2002)).

"rare case" where we employed an absurdity analysis. We held it was "utterly absurd" to apply a property tax refund statute in a manner that would require a county assessor to ignore the value of a $464,635 structure when assessing the value of the parcel for real estate tax purposes. *Id.* at 617. But we are not aware of any other situation where we have allowed an absurdity analysis to override the plain meaning of a statute. The City cites *Olson v. Ford Motor Co.*, 558 N.W.2d 491 (Minn.1997), which states that "[w]hen, however, the literal meaning of the words of a statute would produce an absurd result, we have recognized our obligation to look beyond the statutory language to other indicia of legislative intent." *Id.* at 494. But that statement was dicta because, in the end, we concluded in *Olson* that we should not disregard the plain meaning of the statute. *Id.* at 495. And even in *Wegener*, we ultimately determined that there was no conflict between the literal meaning of the statute and the clear legislative purpose. 505 N.W.2d at 617.

In Lena Hyatt's situation, although there might be good policy reasons to not apply the dog bite statute to police dogs, we cannot say that holding municipalities liable for police dog injuries or attacks is "utterly absurd" or "utterly confounds a clear legislative purpose." For the reasons discussed below, we are not persuaded that the dog bite statute confounds the purpose of the reasonable force statute because, first, it is not certain that the reasonable force statute applies to this circumstance and, second, even if it does, any conflict with the dog bite statute can be reconciled. Given the clear language, expansive scope, and anticipation of potential ambiguities in the dog bite statute, we will not disregard the plain meaning of the words used. We hold that the dog bite

statute applies to police dogs and the municipalities that own them. Thus, we reverse the grant of summary judgment to the City on Lena Hyatt's claim under the dog bite statute.

## II.

We turn next to the question of whether the reasonable force statute applies to the City's use of force that resulted in the alleged injury to Lena Hyatt. Lena Hyatt argues that the reasonable force statute does not apply to her injury because she was an innocent bystander. She reads the reasonable force statute as authorizing the use of force only against the arrestee. If she is correct, there would be no need to reconcile the reasonable force statute with the dog bite statute.

The reasonable force statute authorizes public officers to use "reasonable force * * * upon or toward the person of another." Minn.Stat. § 609.06, subd. 1. It does not limit the use of reasonable force to the person who is the subject of an arrest or other police actions authorized by the statute. In a comparable setting, when the legislature meant to limit the authorization for the use of force to the person arrested, it said so specifically. *See* Minn.Stat. § 629.32 (2004) ("A peace officer making an arrest may not subject *the person arrested* to any more restraint than is necessary for the arrest and detention.") (emphasis added).

Perhaps more importantly, the authorization in section 609.06 is stated broadly to include force that is directed *"toward* the person of another." (Emphasis added.) Thus, even if the reference to "another" was limited to the arrestee, the authorization would still apply so long as the reasonable force was directed "toward" the arrestee. In other words, the authoriza-

tion to use reasonable force is not limited only to situations where the force is used "upon" the arrestee.

The statute does not specifically address the legal consequence where reasonable force is directed toward the arrestee but causes harm to an innocent bystander. But reference to the common law provides some guidance on that issue. Generally, tort law recognizes that the use of force that would otherwise result in actionable assault, battery, or false imprisonment is "privileged" if it is reasonable and it is used for the purpose of effecting a lawful arrest. *See, e.g.,* Restatement (Second) of Torts § 118 (1965) ("The use of force against another for the purpose of effecting his arrest and the arrest .thereby effected are privileged if * * * [several applicable] conditions * * * exist"). And, in that context, the privilege extends to harm to an innocent bystander caused by force directed toward the arrestee, unless under the circumstances it was "unreasonable for [the actor] to take the chance of causing grave harm to bystanders." Restatement (Second) of Torts § 137 cmt. c (1965). Thus, in *Dyson v. Schmidt,* 260 Minn. 129, 138–39, 109 N.W.2d 262, 268–69 (1961), we articulated the rule that police officers are authorized to use reasonable force to effect the arrest of a person appearing to present a grave danger to the officers and others, and that the authorization extends to the unintended harm that the force causes to an innocent bystander. We said that this rule would not apply if the officers were negligent in creating the situation that led to the use of force, and if the use of force was the proximate cause of the injury. *Id.* at 139, 109 N.W.2d at 268–69.

The common law also recognizes that, in addition to the privilege to direct reasonable force toward the arrestee, police are also privileged to direct reasonable force toward a third person who attempts to impede a lawful arrest. According to the Restatement (Second) of Torts § 138 (1965):

> Where another by his conduct knowingly causes the actor reasonably to believe that he is intentionally impeding the privileged arrest or recapture of a third person, * * * the actor is privileged to use such force against the other as he would be privileged to use against the third person if he resisted or attempted to escape.

The reasonable force statute was enacted 2 years after *Dyson.* It appears to have been written broadly to allow for "judicial development in construing the words 'reasonable force.'" Minn.Stat. Ann. § 609.06 advisory comm. cmt.—1963 (West 2003). Thus, it is fair to conclude that the statute both incorporated the common law and provided a mechanism for the common law to continue to develop within the framework of the statute. In this context, we observe that there is nothing in the statute to suggest a legislative intent to make the statutory authorization narrower than the common law privilege.

Consistent with the common law, we hold that the reasonable force statute generally applies to harm caused to an innocent bystander by authorized force that is directed by a public officer "toward" an arrestee. We also hold that the reasonable force statute generally applies to force that is directed by a public officer toward a third person who is or reasonably appears to be impeding a lawful arrest.

### III.

Because this matter comes to us on summary judgment, we recognize that the ap-

plication of the reasonable force statute to Hyatt may depend on the resolution of genuine issues of material fact. But, if those issues are ultimately determined in such a manner that the reasonable force statute applies to this case, it will be necessary to reconcile any conflict between the dog bite statute and the reasonable force statute. Under our de novo review, we believe that the relevant guideline of statutory construction for reconciling the provisions is contained in Minn.Stat. § 645.26, subd. 1 (2004), which reads as follows:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

The dog bite statute, which makes a broad assignment of liability to "any person" who harbors or keeps a dog, is more general than the special provision in the reasonable force statute, which permits only "public officers" and those who assist them to use "reasonable force" in specified circumstances. In addition, the dog bite statute was enacted in 1951. Act of April 12, 1951, ch. 315, § 1, 1951 Minn. Laws 413, 413–14. The reasonable force statute is part of the Criminal Code enacted in 1963.[5] Act of May 17, 1963, ch. 753, art. 1, § 609.06, 1963 Minn. Laws 1185, 1189–91. Therefore, we hold that to the extent the dog bite statute conflicts with the reasonable force statute, the special and subsequently enacted provisions of the reasonable force statute prevail.

Our analysis parallels that of the Arizona Court of Appeals, which held that although the state's strict liability dog bite statute[6] unambiguously applied to police dogs, it had to be read alongside "justification statutes" that unambiguously allowed police officers to use reasonable force when making lawful arrests. *Weekly v. City of Mesa*, 181 Ariz. 159, 888 P.2d 1346, 1353 (1994). The Arizona court said:

> We see no difference between a police officer directing a dog to attack a person and a police officer directing a blow at a person with a baton. In both situations, the officer is directing the force; in both situations, the reasonableness of the use of that force is a factual determination. Only the instrumentality is different. Most cases that have considered this issue in the context of criminal prosecutions agree that the use of a police dog to effect an arrest or detention falls

---

5. Previously, the use of "force or violence" was permissible "[w]hen necessarily used by a public officer in the performance of a legal duty." Minn.Stat. § 619.40(1) (1961). The 1963 Criminal Code introduced the idea that force is authorized when it is "reasonable" instead of when it is "necessary."

6. "The owner of a dog which bites a person when the person is in or on a public place or lawfully in or on a private place, including the property of the owner of the dog, is liable for damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of its viciousness."

within the justification statute.[7]

*Id.* at 1352.

We reverse the court of appeals' decision, which granted summary judgment and dismissed the claim made under the dog bite statute, and hold that Hyatt may pursue a claim under that statute. We further hold that Hyatt's claim may be limited by the authorization for the use of reasonable force under the reasonable force statute, if that statute is found to be applicable under the facts as ultimately determined. Because the court of appeals did not reach the City's alternative claims of immunity or address whether the police department is a legal entity subject to suit, we remand to the court of appeals with directions to consider those issues. If the court of appeals determines that the City is not entitled to immunity, the case should then be remanded to the district court for trial of genuine issues of material fact arising from the dog bite and reasonable force statutes.

Reversed and remanded to the court of appeals.

Ariz.Rev.Stat. 24–521 (1990) (renumbered 11–1025 (2003)).

7. We note that the Arizona legislature amended its dog bite statute in 1992 to exclude a "military or police" dog that bites in defense of itself or a person, when the bite occurred as the dog assisted with an apprehension, investigation, or warrant execution. *See* Ariz. Rev.Stat. Ann. § 11–1025(B) (2003). We also note that the exclusion does not apply when a police or military dog bites an innocent bystander—someone "not a party to, nor a participant in, nor suspected to be a party to or a participant in, the act that prompted the use of the dog." Ariz.Rev.Stat. Ann. § 11–1025(C) (2003). Presumably, if the Minnesota Legislature wishes to make section 347.22 of Minnesota Statutes inapplicable to police dogs or to address potential liability to innocent bystanders, it will do so.