**STATE of Minnesota, Respondent,**

v.

**Farhia Salad BASAL, Appellant.**

**No. A08–0005.**

Court of Appeals of Minnesota.

March 31, 2009.

Lori Swanson, Attorney General, St. Paul, MN, and James C. Backstrom, Dakota County Attorney, Miriam E. Rea, Assistant County Attorney, Dakota County Judicial Center, Hastings, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Michael F. Cromett, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; JOHNSON, Judge; and RANDALL, Judge.

## OPINION

JOHNSON, Judge.

A Dakota County District Court judge found Farhia Basal guilty of wrongfully obtaining public assistance. On appeal, Basal argues that the district court erred in its interpretation of the statute governing financial eligibility for public-assistance benefits. Basal also argues that a 2007 amendment to the statute should be applied retroactively to the conduct for which she was convicted. For the reasons stated below, we affirm.

## FACTS

Basal began receiving food stamps and Minnesota Family Investment Program (MFIP) benefits in 2002. By law, she was required to recertify her eligibility on an annual basis. See Minn.Stat. § 256J.32, subd. 6 (2004). In addition, she was required to report, among other things, a change in her assets that may affect her eligibility, within ten days of the change. See Minn.Stat. § 256J.30, subd. 9(6) (2004). Basal submitted recertification applications to the Dakota County Department of Employment and Economic Assistance in September 2003, September 2004, August 2005, and September 2005. In her September 2005 recertification application, Basal stated that she owned one vehicle, a 1997 Plymouth Voyager van. That van was the only vehicle she declared on her four recertification applications.

In July 2006, Dakota County officials investigated Basal's eligibility for benefits and learned that she had owned three motor vehicles in September 2005. Records of the Driver and Vehicle Services Division of the Department of Public Safety showed that, in addition to the 1997 Plymouth van, Basal had title to a 1998 Mazda 626 and a 2002 Jeep Grand Cherokee. If all three motor vehicles had been listed in Basal's September 2005 recertification application, her assets would have exceeded the eligibility limits. As a result of Basal's failure to disclose the Mazda and Jeep vehicles, she received $4,956 in benefits to which she was not entitled from April through September 2005.

In December 2006, the state charged Basal with two counts of wrongfully ob-

taining public assistance, in violation of Minn.Stat. §§ 256.98, 393.07. Count 1 pertained to Basal's MFIP benefits; count 2 pertained to her receipt of food stamps. The case proceeded to a bench trial in August 2007. During trial, the state voluntarily dismissed count 2. The state presented the testimony of seven witnesses. Basal did not testify and did not introduce any other evidence. The district court found Basal guilty on count 1.

After trial, Basal moved the district court to reconsider its verdict on the ground that the asset-limitation provisions in section 256J.20 are unconstitutionally vague. The district court denied the motion for reconsideration. The district court imposed a sentence of, among other things, two days in jail and a restitution obligation in an amount to be determined. Basal appeals.

## ISSUES

I. Is the value of loans made against a vehicle owned by a recipient of public-assistance benefits subtracted from the value of the vehicle when calculating the recipient's assets for purposes of determining her eligibility for public-assistance benefits pursuant to Minnesota Statutes section 256J.20, subdivision 3?

II. Does the 2007 amendment to Minnesota Statutes section 256J.20, subdivision 3(1), apply retroactively to Basal's September 2005 recertification application for public-assistance benefits?

## ANALYSIS

### I.

■ Basal argues that the district court erred in its interpretation and application of Minnesota Statutes section 256J.20, subdivision 3, which determines whether and how the value of a motor vehicle owned by a person receiving public assistance affects the person's eligibility for public assistance. Basal's argument has two parts. First, she argues that the statute should be construed to avoid an absurd result. Second, she argues that the statute violates her rights under the equal protection guarantee of the Minnesota Constitution. These arguments are subject to a de novo standard of review. *See State v. Wolf,* 605 N.W.2d 381, 386 (Minn.2000); *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996).

### A. Interpretation of Statute

■ Basal was convicted of violating section 256.98. To establish a defendant's guilt under that statute, the state is required to prove the following elements: "(1) She obtained assistance; (2) She was not entitled to this assistance at all, or in the amount she was seeking, and that she knew this; (3) She made a false representation and intended thereby to obtain assistance . . . ." *See State v. Ibarra,* 355 N.W.2d 125, 129 (Minn.1984). To establish the third element, the state is required to prove that Basal's false representation was material. *See id.*

Basal challenged the interpretation and application of the asset-limitation provisions of section 256J.20 in a motion for judgment of acquittal following the introduction of evidence. In essence, Basal sought a directed verdict of not guilty on the ground that her alleged misrepresentation was not material because, under her preferred interpretation of section 256J.20, the alleged misrepresentation would not result in a finding of ineligibility. The state had introduced copies of Basal's titles to the three vehicles. Each title indicates the existence of a security interest in the vehicle, but there was no evidence concerning the amount of debt secured by the vehicles.

To be eligible for MFIP benefits upon an initial application, a person must not

have assets exceeding $2,000 in value. Minn.Stat. § 256J.20, subd. 3. To remain eligible after beginning to receive MFIP benefits, a person must not have assets exceeding $5,000 in value. *Id.* When ascertaining a person's assets, a county agency must "use the equity value of legally available real and personal property." *Id.*, subd. 1. The term "equity value" is defined as "the amount of equity in real or personal property owned by a person and ... determined by subtracting any outstanding encumbrances from the fair market value." Minn.Stat. § 256J.08, subd. 29 (2004).

■ The statute at issue in this appeal contains detailed provisions for the valuation of assets for purposes of MFIP eligibility. Several types of property are excluded from the asset calculation, including homesteads, mobile homes, life insurance policies, burial plots, property needed to produce earned income, and clothing. Minn.Stat. § 256J.20, subds. 2(a), 3(2)-(5), (8). One part of the statute relates specifically to the valuation of motor vehicles. In September 2005, when Basal submitted her recertification application, that part of the statute provided that a recipient's assets should be calculated so as to include

a licensed vehicle up to a loan value of less than or equal to $7,500. The county agency shall apply any excess loan value as if it were equity value to the asset limit described in this section. If the assistance unit owns more than one licensed vehicle, the county agency shall determine the vehicle with the highest loan value and count only the loan value over $7,500, excluding: (i) the value of one vehicle per physically disabled person when the vehicle is needed to transport the disabled unit member; this exclusion does not apply to mentally disabled people; (ii) the value of special equipment for a handicapped mem-

ber of the assistance unit; and (iii) any vehicle used for long-distance travel, other than daily commuting, for the employment of a unit member.

The county agency shall count the loan value of all other vehicles and apply this amount as if it were equity value to the asset limit described in this section. To establish the loan value of vehicles, a county agency must use the N.A.D.A. Official Used Car Guide, Midwest Edition, for newer model cars. When a vehicle is not listed in the guidebook, or when the applicant or participant disputes the loan value listed in the guidebook as unreasonable given the condition of the particular vehicle, the county agency may require the applicant or participant [to] document the loan value by securing a written statement from a motor vehicle dealer licensed under section 168.27, stating the amount that the dealer would pay to purchase the vehicle. The county agency shall reimburse the applicant or participant for the cost of a written statement that documents a lower loan value . . . .

*Id.*, subd. 3(1). Subdivision 3(1) uses the term "loan value" to refer to what is essentially the market value of a motor vehicle. In 2005, the first $7,500 of "loan value" of a motor vehicle (*i.e.*, the first $7,500 of its market value) was excluded from the asset calculation. If a participant had a vehicle valued at $7,500 or less, the entire value of the vehicle would have been excluded from the calculation of assets. As the statute directed, any value in excess of $7,500 must have been applied to the calculation of assets "as if it were equity value," *id.*, without regard for whether the recipient borrowed money to pay for the vehicle or used the vehicle as security for any other type of loan.

Basal contends that section 256J.20, subdivision 3, as described above and as inter-

preted and applied by the district court, leads to an absurd result. Her argument focuses on the fact that subdivision 3(1) treats encumbrances against motor vehicles in a way that is different from the way other parts of the statute treat encumbrances against other forms of property. She asserts that the plain meaning of the statute is absurd because the statute allows recipients to subtract debt from the value of other forms of property but not from the value of a motor vehicle.

The supreme court has held that a statute may be deemed absurd "only in rare cases where the plain meaning 'utterly confounds a clear legislative purpose.'" *Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 827 (Minn.2005) (quoting *Mutual Serv. Cas. Ins. Co. v. League of Minnesota Cities Ins. Trust*, 659 N.W.2d 755, 761 (Minn.2003)). Ordinary definitions of the word "absurd" also set forth a stringent standard: "[r]idiculously incongruous or unreasonable" or "manifesting the view that there is no order or value in the universe," *The American Heritage Dictionary* 6 (4th ed.2007), and "obviously and incomprehensibly inconsistent with manifest truth, opinions generally held, or the plain dictates of common sense," *Webster's New Int'l Dictionary* 11 (2d ed.1946). The existence of an absurdity in a statute is not a basis for a court to substitute its judgment concerning the wisdom of the statute. Rather, under Minnesota law, if the plain meaning of a statute is absurd, a court is permitted only to "'deviate a little from the received sense and literal meaning of the words, and interpret the instrument in accordance with what may appear to have been the intention and meaning of its framers.'" *Kellerman v. City of St. Paul*, 211 Minn. 351, 353, 1 N.W.2d 378, 380 (1941) (quoting *Taylor v. Taylor*, 10 Minn. 107, 121, 10 Gil. 81, 93 (1865)). The supreme court has stated, "The objective of all statutory interpretation is 'to give effect to the intention of the legislature in drafting the statute.'" *State v. Thompson*, 754 N.W.2d 352, 355 (Minn.2008) (quoting *State v. Iverson*, 664 N.W.2d 346, 350 (Minn.2003)). When ascertaining the legislature's intent, we must "assume that the legislature does not ... intend absurd or unreasonable results." *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003). Indeed, "[t]he principal method of determining the legislature's intent is to rely on the plain meaning of the statute." *Thompson*, 754 N.W.2d at 355.

In light of this guidance, we do not perceive the plain meaning of section 256J.20, subdivision 3, to be absurd. It cannot be said that the plain meaning of the statute "utterly confounds a clear legislative purpose." *Hyatt*, 691 N.W.2d at 827 (quotation omitted). The statute's manner of treating encumbrances against motor vehicles is not "[r]idiculously incongruous or unreasonable" or suggestive of a universe with no "order or value," *see The American Heritage Dictionary* 6 (4th ed.2007), and it is not "obviously and incomprehensibly inconsistent with manifest truth, opinions generally held, or the plain dictates of common sense," *Webster's New Int'l Dictionary* 11 (2d ed.1946). The general purpose of chapter 256J is to provide public-assistance benefits to those residents of Minnesota who are determined to be most in need of assistance. *See generally Dandridge v. Williams*, 397 U.S. 471, 483–87, 90 S.Ct. 1153, 1161–63, 25 L.Ed.2d 491 (1970) (discussing purpose of public-assistance laws). As the state argues, the legislature reasonably could have determined, as a matter of legislative policy, that using debt to acquire a motor vehicle, or using a motor vehicle as security for another type of loan, should not enhance a person's eligibility for public assistance. The general purpose of chapter 256J is not in irreconcilable conflict with section

256J.20, subdivision 3, and, accordingly, is not absurd. Thus, we conclude that the district court did not err by applying the plain meaning of section 256J.20, subdivision 3.

## B. Equal Protection

 Basal also argues that section 256J.20 violates the equal protection guarantee of the Minnesota Constitution because the statute treats motor vehicles and other forms of property differently. Basal did not assert an equal protection argument in the district court. Rather, Basal argued to the district court that the statute is unconstitutionally vague. The vagueness doctrine is based on the Due Process Clause, Minn. Const. art. I, § 7, and serves to ensure that a person of ordinary intelligence may know a law's meaning. *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985). The two arguments are distinct. Thus, the equal protection argument has been forfeited. *Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996). Basal cannot satisfy the requirements of the plain error test, *see* Minn. R.Crim. P. 31.02, because, for the essential reasons stated above in part I.A., there plainly is a rational basis for the statute sufficient to satisfy the equal protection guarantee of the state constitution. *See Greene v. Commissioner of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 729–30 (Minn. 2008).

## II.

Basal also argues that she is entitled to the benefit of an amendment to section 256J.20, subdivision 3(1), that was enacted and became effective after she submitted her September 2005 recertification application. Specifically, the legislature amended section 256J.20, subdivision 3(1), in 2007 by increasing the motor-vehicle exclusion from $7,500 to $15,000 for a person's first

vehicle and providing a $7,500 exclusion for additional vehicles. 2007 Minn. Laws ch. 147, art. 2, § 27, at 1866–67. If the higher exclusion were to apply to Basal, she would have remained eligible for MFIP benefits despite owning three vehicles in September 2005 and, therefore, would not have made a materially false representation.

 As a general rule, amendments to a statute do not apply retroactively. *State v. Traczyk*, 421 N.W.2d 299, 300 (Minn.1988). We "presume that a statutory enactment applies to the future and not to the past." *Chapman v. Davis*, 233 Minn. 62, 65, 45 N.W.2d 822, 824 (1951). To be applied retroactively, an amendment to a statute must contain clear evidence of retroactive intent, "such as mention of the word 'retroactive.'" *Traczyk*, 421 N.W.2d at 300 (quotation omitted). The retroactivity of a statute is a matter of statutory interpretation, which we review de novo. *See Murphy*, 545 N.W.2d at 914.

Basal relies exclusively on *State v. Coolidge*, 282 N.W.2d 511 (Minn.1979), which appears to provide for an exception to the general rule stated above. Basal contends that, under *Coolidge*, she may take advantage of the 2007 amendment to section 256J.20, subdivision 3(1), because "where [a] criminal law in effect is repealed ... all prosecutions are barred where not reduced to a final judgment," and "a statute mitigating punishment is applied to acts committed before its effective date, as long as no final judgment has been reached." *Coolidge*, 282 N.W.2d at 514. It is questionable whether the 2007 amendment to section 256J.20, subdivision 3(1), "repealed" any crime. It would be more accurate to say that the amendment merely increased the exclusion for motor vehicles and, therefore, made it less likely that a false representation concerning ownership of motor vehicles would be material. Even

after the 2007 amendment, it remains a crime to make a material misrepresentation on a recertification application for public-assistance benefits. Basal has a slightly better argument that the 2007 amendment "mitigate[es] punishment" because the $15,000 threshold, if it were applicable, would eliminate her restitution obligation.

We need not resolve these questions, however, because subsequent cases have substantially narrowed *Coolidge's* scope. In *Edstrom v. State,* 326 N.W.2d 10 (Minn. 1982), the supreme court held that *Coolidge* applies only in the absence of a contrary statement of intent by the legislature concerning the effective date of an amendment to a statute. *Id.* at 10. Here, the legislature expressly provided that the 2007 amendment to section 256J.20, subdivision 3, would become effective January 1, 2008. 2007 Minn. Laws ch. 147, art. 2, § 64, at 1901. The language setting forth the effective date of the amendment in this case is equivalent to the language that was at issue in *Edstrom.* *See* Minn.Stat. § 609.351 (1980). Because the legislature provided for a specific effective date for the 2007 amendment, the legislature did not intend for the amendment to apply to conduct occurring before the effective date. *See Edstrom,* 326 N.W.2d at 10; *State v. McDonnell,* 686 N.W.2d 841, 846 (Minn.App.2004) (holding that amendment to statute did not apply retroactively because legislature explicitly provided for effective date), *review denied* (Minn. Nov. 16, 2004). Thus, the 2007 amendment to section 256J.20, subdivision 3(1), does not apply retroactively to Basal's September 2005 recertification application.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## DECISION

Pursuant to Minnesota Statutes section 256J.20, subdivision 3(1), the value of any loans made against Basal's vehicle is not subtracted from the value of her vehicle when calculating her assets for purposes of determining her eligibility for public-assistance benefits. The 2007 amendment to Minnesota Statutes section 256J.20, subdivision 3(1), does not apply retroactively to Basal's September 2005 recertification application.

**Affirmed.**

RANDALL, Judge (dissenting).\*

I respectfully dissent. I disagree with the majority's conclusion that the plain language of section 256J.20, subdivision 3, does not lead to an absurd result and that Basal is not entitled to the benefits of an amendment to section 256J.20, subdivision 3(1). I would reverse Basal's conviction.

*A. Interpretation of Statute*

A statute should be construed "to give effect to all its provisions," and if possible, "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted). "Finally, courts should construe a statute to avoid absurd results and unjust consequences." *Id.* at 278; *see also State v. Murphy,* 545 N.W.2d 909, 916 (Minn.1996) (rejecting a narrow interpretation of the terroristic threats statute that would produce absurd results); *State v. Campbell,* 756 N.W.2d 263, 274 (Minn.App. 2008), *review denied* (Dec. 23, 2008) (rejecting interpretation of statute criminalizing failure to use financial resources of vulnerable adult to care for adult that would create absurd result).

Minn. Const. art. VI, § 10.

Minnesota law defines "equity value" as "the amount of equity in real or personal property owned by a person and is determined by subtracting any outstanding encumbrances from the fair market value." Minn.Stat. § 256J.08, subd. 29 (2004). "Encumbrance," for purposes of the applicable statutes, "means a legal claim against real or personal property that is payable upon the sale of that property." Minn.Stat. § 256J.08, subd. 28a (2004). This logically makes sense. A person who owns a homestead worth $100,000, but encumbered by a $95,000 mortgage, for instance, only has $5,000 in equity in the homestead.

Section 256J.20, subdivision 1, reflects this reality, directing a county agency to use the "equity value of legally available real and personal property" owned by applicants seeking MFIP assistance. The majority's interpretation of subdivision 3(1), however, turns this logical proposition on its head. Under that interpretation, the statute instead directs a county agency to subtract the value of the loan, up to only $7,500, and then "apply any excess loan value as if it were equity value." Minn. Stat. § 256J.20, subd. 3(1). Thus, the majority's interpretation of subdivision 3(1) directs a county agency to count a loan, the very thing section 256J.08, subdivision 29, excepts from equity value, *as equity value*.

Under the district court's conclusion, a person applying for MFIP assistance may offset encumbrances on real property such as homesteads or mobile homes, so that only the equity value of those properties may be counted as assets. An applicant, however, may not similarly offset an encumbrance on a vehicle. As a result, a vehicle, even one encumbered with a loan for 100% of its value, is considered an asset if the vehicle's value is over $7,500.

That result should fly in the face of legislative intent: to assist people who are down on their luck. As the majority reads subdivision 3(1), a person, with a vehicle worth $20,000, encumbered by a loan of $20,000, is considered to have $12,500 in assets, making her ineligible for MFIP assistance, notwithstanding the fact that if she actually sold the vehicle for $20,000, she would walk away with not one dollar. This result is "inconsistent with the plain dictates of common sense" and is "logically contradictory." *Black's Law Dictionary* 10 (5th ed.1979) (defining "absurdity"). This should not be what the legislature intended.

### B. Amendment to Minn.Stat. § 256J.20, subd. 3(1)

The district court found that Basal is not entitled to the benefit of a statutory amendment that would have made her not responsible for restitution. I respectfully disagree.

The majority relies on *Edstrom v. State*, 326 N.W.2d 10 (Minn.1982), to limit the holding in *State v. Coolidge*, 282 N.W.2d 511 (Minn.1979). The statute at issue in *Edstrom*, however, is distinguishable from the statute at issue here. In *Edstrom*, the postconviction petitioner pleaded guilty to criminal-sexual-conduct charges from conduct that occurred in March 1975. 326 N.W.2d at 10. Subsequent to his conviction, the legislature amended the applicable statute to reduce the penalty for such a conviction from a 30–year sentence to a 20–year sentence. *Id.* The supreme court noted that in passing the legislation, the legislature enacted a separate section that *specifically states* that "crimes committed prior to August 1, 1975, *are not affected by* [the amendment's] provisions." Minn.Stat. § 609.351 (1980) (emphasis added); *see also Edstrom*, 326 N.W.2d at 10. Here, although the enacting legislation provides

that the 2007 amendment becomes effective January 1, 2008, the legislation *does not contain a specific provision* prohibiting the retroactive application of the statute to still-pending convictions. 2007 Minn. Laws ch. 147, art. 2, § 64, at 1901.

*Coolidge* provides that "where criminal law in effect is repealed ... all prosecutions are barred where not reduced to a final judgment." 282 N.W.2d at 514. I understand the majority's analysis of *Edstrom/Coolidge*. It can be said that differing/ambiguous results can happen when precedent is not "on all four corners" but is at least near the mark. The statutory rules of construction are crystal clear that on penal statutes, ambiguity is resolved in favor of the defendant (criminal or civil) and against the government. *State v. Serstock*, 402 N.W.2d 514, 516 (Minn.1987) (affirming dismissal of two counts of indictment and declining to hold that a violation of an ethics regulation is necessarily illegal); *see also State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002) ("A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant."). *Coolidge* provides that "a statute mitigating punishment is applied to acts committed *before* its effective date, as long as no final judgment has been reached." 282 N.W.2d at 514 (emphasis added). This mandate of *Coolidge* applies. No restitution is mitigation of punishment. If Basal received the benefits of the amendment, she would be entitled to exclude the value of the Jeep in calculating her assets and eligibility for assistance. *See* Minn.Stat. § 256J.20, subd. 3(1) (2008) (allowing for a vehicle exception for "a licensed vehicle up to a loan value of less than or equal to $15,000"). As a result, if she sought assistance today and reported the Jeep, she would be eligible. There would be no loss from a failure to report the Jeep because she would be entitled to

assistance. With *no loss*, there would be no restitution obligation.

The Dakota County Department of Employment and Economic Assistance administers Basal's MFIP benefits. With Basal, that bureaucracy took an overly technical, narrow approach to her petition for welfare benefits. In this day and age, in this economy, poor people are desperate to have some slack cut for them when there is at least a reasonable interpretation that they are entitled to benefits. My sense of judicial review is that based on the law and the facts, Dakota County government cut this one too close. The job of the courts is to look over the shoulder of state and local government, not be its partner.

I note that there are entitlement programs for large corporations, wealthy citizens, huge agri-business corporate farms, oil/mineral exploration, corporations doing business overseas, and a host of others listed in the IRS code, which cannot be detailed in this opinion as Minnesota only has so many trees left available for paper pulp, and I do not want to contribute to any more "clearcutting." If as to those entities just described entitlement programs are construed narrowly to save the taxpayers a buck or two here and a buck or two there, I would say go for it. But to those of our people who are so destitute that they need access to the limited benefits of welfare just to eat, to clothe themselves, and to have a roof over their heads at night, I suggest a more empathetic view of the guidelines surrounding entitlement is prudent.

Anatole France, an articulate and passionate critic of the French government/bureaucracy of the late–19th and early–20th centuries, said in chapter 7 of his novel *The Red Lily* (as part of a larger quote):

For the poor it consists in sustaining and preserving the wealthy in their power and their laziness. The poor must work for this, in presence of the majestic quality of the law which prohibits the wealthy as well as the poor from sleeping under the bridges, from begging in the streets, and from stealing bread.

Anatole France, *The Red Lily* 91 (Winifred Stephens trans., Dodd, Mead, and Company 1925) (1894).

I respectfully dissent and would reverse and remand this case to Dakota County for a recalculation of Basal's application for MFIP assistance.