John S. DREWITZ, Appellant,

v.

MOTORWERKS, INC., et al., Respondents.

No. A04–2338.

Supreme Court of Minnesota.

Feb. 15, 2007.

Rehearing Denied March 15, 2007.

Paul W. Chamberlain, Chamberlain Law Firm, Wayzata, MN, for Appellant John S. Drewitz.

William M. Hart, Mary M.L. O'Brien, Jeffrey M. Thompson, Erica Gutmann Strohl, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Respondent Motorwerks.

David L. Hashmall, Ryan A. Olson, Felhaber Larson Fenlon & Bogt, P.A., Minneapolis, MN, and James Schutjer, Minneso-

ta Automobile Dealers Association, West St. Paul, MN, for Amicus Curia Minnesota Automobile Dealers Association.

**OPINION**

ANDERSON, RUSSELL A., Chief Justice.

In this case, which we refer to as *Drewitz II*, John Drewitz sued his former employer, respondent Motorwerks,[1] for breach of a shareholder agreement, and also sought an order requiring that Motorwerks purchase Drewitz's shares at fair value under Minn.Stat. § 302A.751 (2006). The district court dismissed Drewitz's complaint concluding that his claims were barred by res judicata as a result of a previous lawsuit brought by Drewitz against Motorwerks, which we refer to as *Drewitz I*. *Drewitz v. Walser (Drewitz I)*, No. C3–00–1759, 2001 WL 436223 (Minn. App. May 1, 2001), *rev. denied* (Minn. June 27, 2001). The court of appeals affirmed in part and reversed in part, concluding that res judicata barred Drewitz's claim for a fair value buyout of his shares, but also concluding that Drewitz's claim for breach of the shareholder agreement was not barred by res judicata and that Drewitz remained a shareholder after his employment was terminated by Motorwerks. *Drewitz v. Motorwerks, Inc. (Drewitz II)*, 706 N.W.2d 773, 776, 779, 782–84 (Minn. App.2005). Without expressing an opinion

as to the merits of Drewitz's claim that the shareholder agreement was breached and that Motorwerks was required to repurchase his shares at fair value, we conclude that Drewitz's shareholder status did not terminate when his employment ended and that his claims are not barred by res judicata. We remand to the district court for further proceedings consistent with this opinion.

■ A brief history of this lengthy and acrimonious litigation is necessary.[2] Motorwerks hired Drewitz as a salesman in 1990. *Drewitz I*, 2001 WL 436223, at *1. In July 1993, Drewitz was promoted to the position of general manager of Motorwerks. *Id.* On September 15, 1995, Motorwerks entered into an employment agreement with Drewitz retroactive to January 1, 1995, and also entered into a separate "Shareholder Sale/Purchase/Redemption/Voting/Control Agreement," which we refer to as the shareholder agreement. *Id.*

The shareholder agreement required that Motorwerks purchase Drewitz's stock if Drewitz's employment was terminated, either voluntarily or involuntarily. The agreement gave other shareholders the option of purchasing Drewitz's shares if Motorwerks did not do so and, in that event, required that Drewitz vote his shares to facilitate the purchase. The shares were to be purchased at their book value as of the last day of the month immediately preceding the month in which the termination occurred. Book value was to be

1. Respondents include Motorwerks, Inc., and Motorwerks, Inc., shareholders Jack, Andrew, and Paul Walser. We will collectively refer to respondents as Motorwerks.

2. Because of the posture of the case, we have only the procedural history and a limited factual record before us. We rely on the complaint and court of appeals' opinion in *Drewitz I* for events leading up to the complaint in

*Drewitz I* and on the complaint and answer in *Drewitz II* for the allegations of the parties as to events occurring thereafter. We do not rely on the parties' recitation of events or on any documents included in the appendices to the parties' briefs, except for the shareholder agreement referenced in the two complaints. We therefore deny as moot Drewitz's motion to strike portions of Motorwerks' brief.

computed by Motorwerks' accountant according to principles set forth in the agreement. The stock purchase was to be closed within 90 days of termination of employment, or other "Event of Purchase," and at closing Motorwerks was required to "pay in full all obligations, whether by notes, advances or other form of debt." Payment was to be "in the amount of the balance of indebtedness plus interest at the specified rate to date of payment." The agreement also provided that Drewitz's right to purchase additional shares in the corporation would lapse in the event that his employment was terminated. In summary, under the terms of the shareholder agreement, the termination of Drewitz's employment triggered (1) the end of Drewitz's right to purchase additional shares of Motorwerks, and (2) the start of the 90–day period during which Motorwerks or another shareholder was obligated to purchase Drewitz's shares.

Motorwerks terminated Drewitz's employment in December 1998, effective March 31, 1999. *Drewitz I*, 2001 WL 436223, at *2. In January 1999, Drewitz sued Motorwerks in Ramsey County District Court (*Drewitz I*), claiming that Motorwerks had breached the employment agreement, breached its fiduciary duty, and breached an implied covenant of good faith and fair dealing. *Id.* at *3. Drewitz also claimed that Motorwerks violated his reasonable expectations of, and contractual rights to, continued employment, and sought an order under Minn.Stat. § 302A.751 (2006),[3] requiring purchase of

his shares at fair value, rather than book value as provided in the shareholder agreement. The district court granted Motorwerks' motion for summary judgment in part, dismissing all of Drewitz's claims except his claim that Motorwerks breached the employment agreement. The parties subsequently settled Drewitz's employment agreement claim. *Id.* The court of appeals affirmed the district court and we denied review.

Negotiations extending over the next several years failed to resolve the dispute between Drewitz and Motorwerks as to the amount to be paid for Drewitz's shares, and in May 2004 Drewitz sued Motorwerks in Hennepin County District Court (*Drewitz II*).[4] Drewitz claimed that Motorwerks had failed to unconditionally tender payment for his shares within the time limits specified in the shareholder agreement and that, as a result, he remained a shareholder, entitled to allocation of income and loss and to cash distributions for taxes as provided in the shareholder agreement. Drewitz further claimed that Motorwerks' refusal to honor the terms of the shareholder agreement was unfairly prejudicial to him as a shareholder, and breached not only the agreement itself but also his reasonable expectations as a shareholder. Drewitz alleged that Motorwerks was therefore required to purchase his shares at their fair value, rather than book value, under Minn.Stat. § 302A.751, subd. 2 (2006). Finally, Drewitz alleged that Motorwerks' actions violated an implied covenant of good faith and

---

**3.** Minnesota Statutes § 302A.751 allows a court, on motion from a shareholder of a closely-held corporation, to order the buyout of the shareholder for fair value of the shares, or under the terms of the corporation's by-laws or a shareholder control agreement, when the shareholder has established that the directors or those in control of the corpora-

tion acted in a manner unfairly prejudicial towards one or more shareholders. Minn. Stat. § 302A.751, subd. 1(b)(3), subd. 2.

**4.** The complaint in *Drewitz I* alleges that Motorwerks was then headquartered in St. Paul. The complaint in *Drewitz II* alleges that Motorwerks is headquartered in Minneapolis.

fair dealing and breached the fiduciary duty owed to him by Motorwerks' other shareholders.

Drewitz brought a motion before the district court for an order requiring, among other things, that Motorwerks purchase his shares at their fair value, that he be allocated his proportionate share of Motorwerks' income since 1999, and that Motorwerks make tax distributions to him as provided by the shareholder agreement. Drewitz asked the district court to determine the fair value of the shares if the parties could not do so.

The district court denied Drewitz's motion for an order requiring that Motorwerks buy Drewitz's shares at fair value, to be determined, if necessary, by the court. The court concluded that Drewitz's claim was included in *Drewitz I* and thus barred by res judicata. The district court also concluded that "[t]he proper procedure requires that the parties return to Ramsey County District Court and move for enforcement of the judgment or settlement," a reference, presumably, to the judgment of the Ramsey County court dismissing Drewitz's claims on summary judgment and to the settlement between Drewitz and Motorwerks of Drewitz's employment claim (the terms of which are not disclosed in either *Drewitz I* or this case). The district court also concluded that Drewitz was no longer a shareholder in Motorwerks, and dismissed his complaint "with leave to proceed to enforce the settlement in Ramsey County District Court."

Drewitz appealed and the court of appeals affirmed the district court's conclusion that Drewitz's claim for a fair value buyout was barred by res judicata. The court of appeals reasoned that the claim for fair value buyout arose "out of the same set of factual circumstances and connected series of transactions as his original claim and is therefore barred by the judg-

ment in the original action." *Drewitz II*, 706 N.W.2d at 779. But the court of appeals reversed the district court's conclusion that Drewitz's breach of contract claim was barred by res judicata, concluding that the claim was based on events occurring after the complaint in *Drewitz I* was served, and that Drewitz was not required to supplement his complaint in *Drewitz I* to include such claims. *Drewitz II*, 706 N.W.2d at 781–82. The court of appeals also reversed the district court, concluding that the shareholder agreement did not automatically divest Drewitz of his shareholder status when his employment was terminated, and that therefore Drewitz remained a shareholder in Motorwerks until Motorwerks tendered full payment for his shares unconditionally. *Id.* at 784–85. While affirming the dismissal of Drewitz's claim that he is entitled to fair value for his Motorwerks shares, the court of appeals reversed and remanded to the district court for further consideration of Drewitz's claims that the shareholder agreement had been breached and that he was entitled to ongoing shareholder distributions.

## I.

■ The complaint in *Drewitz II* alleges that after Drewitz's employment was terminated, Motorwerks violated his "reasonable expectations" as a shareholder. If Drewitz's shareholder status terminated simultaneously with termination of his employment, he no longer had reasonable expectations as a shareholder. Thus, we first address the issue of whether Drewitz's shareholder status terminated simultaneously with termination of his employment. We consider whether Minn.Stat. ch. 302A (2006), the Minnesota Business Corporations Act (MBCA), or the shareholder agreement contemplate an automatic termination of shareholder status and

rights when employment ends. We conclude that they do not.

We find nothing in chapter 302A that explicitly terminates shareholder status simultaneously with employment termination. Motorwerks asserts that chapter 302A implies an automatic cessation of shareholder rights upon termination of the employment contract, arguing that the procedures applicable to dissenting shareholders under Minn.Stat. §§ 302A.751 and 302A.473 (2006) support such a rule. Motorwerks points out that once a shareholder decides to dissent from a corporate action, under Minn.Stat. § 302A.473, subd. 4 (2006), the dissenting shareholder retains his or her rights as a shareholder only until the proposed corporate action takes effect. But the limited circumstances under which this procedure is available persuade us that the legislature did not intend shareholder status to be terminated automatically under all other circumstances, and had the legislature intended shareholder status to be terminated automatically upon employment termination, it could have crafted a similar procedure. The fact that it did not is further evidence to us that the legislature did not intend the shareholder status of employees to end automatically upon employment termination.

If shareholder status were to end immediately upon employment termination, certain minority shareholder protections within chapter 302A would be unavailable to former shareholders. For example, Minn. Stat. § 302A.751, subd. 1(b)(2) (2006), allows "a shareholder" to seek judicial intervention when those in control of a closely held corporation have acted fraudulently or illegally toward him. That remedy would be unavailable to a terminated employee if his shareholder status was deemed to end automatically when employment ended. *Cf. Pedro v. Pedro (Pedro*

*II)*, 489 N.W.2d 798, 800, 804 (Minn.App. 1992), *rev. denied* (Minn. Oct. 20, 1992) (holding that former shareholder who had been terminated two months before filing a complaint was entitled to relief under section 302A.751).

Furthermore, other statutes indicate that the legislature likely did not intend shareholder status to end immediately upon employment termination. For example, Minn.Stat. § 336.8–104(a)(1) (2006) provides that a person acquires a security once the security is "delivered" to the purchaser, and Minn.Stat. § 336.8–301(a)(1) (2006) provides that "delivery" of a certificated security occurs when the purchaser acquires physical possession of the security certificate. Under those statutes, a corporation would not acquire a terminated employee's shares until the corporation acquired physical possession of the share certificates. Had the legislature intended the shares of a terminated employee to be automatically transferred to the corporation or another shareholder, without physical delivery of the shares, it would have made an explicit exception for such a transfer.

■  Although we conclude that chapter 302A does not compel termination of shareholder status when employment ended, the question remains whether the shareholder agreement so provided. We first examine whether chapter 302A would preclude such a provision. While nothing in chapter 302A compels the conclusion that Drewitz's status as a shareholder ended when his employment ended, Minn.Stat. § 302A.457, subd. 1 (2006), allows shareholders to agree as to "the control of any phase of the business and affairs of the corporation, its liquidation and dissolution, or the relations among shareholders of or subscribers to shares of the corporation." Section 302A.457 does not specifically include the shareholder status of terminated

employees among the matters to which shareholders may agree, but Minn.Stat. § 302A.751, subd. 3a (2006), provides that "any written agreements, including employment agreements and buy-sell agreements, between or among shareholders or between or among one or more shareholders and the corporation are presumed to reflect the parties' reasonable expectations concerning matters dealt with in the agreements." And Minn.Stat. § 302A.751, subd. 2 (2006), provides that if a "shareholder control agreement" exists, its terms shall govern the buy-out of a shareholder who brings an action under that section unless the court determines that those terms are unreasonable.[5] Given the broad scope of matters that may be covered by written agreement of the parties, it appears that chapter 302A does not bar the parties from agreeing to when the shareholder status of a shareholder-employee ends. We therefore look next to the terms of the shareholder agreement to see if those terms provide for the automatic termination of Drewitz as a shareholder upon termination of his employment.

■ Neither party claims that the shareholder agreement is ambiguous. The construction of an unambiguous contract presents a question of law, which we review de novo. See *Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 271 (Minn.2004); *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998).

In our review of the shareholder agreement, we find no provision that terminates shareholder status immediately. In fact, certain provisions of the agreement suggest the contrary conclusion. For example, Article Four of the shareholder agreement, which addresses the circumstances

requiring the purchase of a shareholder's stock by the corporation, contemplates a delay between the event that triggers the purchase requirement and the purchase itself. Under Article 4.04, if Drewitz's employment by Motorwerks is terminated for any reason, Motorwerks "shall purchase, and the terminated Shareholder shall sell to the Company, all of the Shares of the Company issued to and outstanding in the name of the terminated Shareholder." But Article 4.04 also gives other shareholders the option to purchase Drewitz's shares instead of Motorwerks. Article 4.06 of the shareholder agreement requires that if another shareholder elects to purchase the shares, "each Shareholder and Permitted Shareholder shall vote his Shares and take all other reasonably required actions as directed by the Nonselling Shareholder to implement such decision of the Nonselling Shareholder." The shareholder agreement includes Drewitz in the definition of "Shareholder." The existence of a purchase option for nonselling shareholders and the requirement that the selling shareholder vote his shares to implement the purchase suggest a delay in share transfer, during which time the selling shareholder is presumably required to exercise shareholder rights and responsibilities.

Similarly, Article Five of the shareholder agreement, which explains the mechanics of share transfer in the event of employment termination, does not explicitly limit the rights of the shareholder once employment ends. Article Five explains that the termination of employment, like the death or disability of a shareholder, "shall be referred to herein as an 'Event of Purchase.'" Motorwerks contends that the share transfer occurs simultaneously

---

5. We do not decide whether a shareholder agreement that terminates shareholder status upon termination of employment may deprive a shareholder-employee of standing under 302A.

with the "Event of Purchase," but the provisions of the shareholder agreement do not support Motorwerks' argument.

Under Article 5.04, the closing for the purchase of a selling shareholder's shares must occur within 90 days of the "Event of Purchase" (and within 30 days of the "Event of Purchase" when the purchase is an exercise of the company's right of first refusal or when the purchase is triggered by an involuntary transfer such as the bankruptcy of the shareholder). In the case of an involuntary transfer, such as the bankruptcy of the shareholder, the agreement specifically requires that the selling shareholder's shares be delivered to the purchaser and payment made at closing. But an involuntary transfer, like the termination of employment, is also termed by the shareholder agreement to be an "Event of Purchase." If Motorwerks were correct that share transfer occurs simultaneously with the "Event of Purchase," such as the bankruptcy of the shareholder, there would be no need for a separate closing at which the shareholder formally delivers his shares.

■ Finally, we note that although these parties have been engaged in lengthy litigation, not every former employee will be adverse to the corporation that formerly employed him, and a rule that automatically divested a shareholder of his or her interest in the corporation when the shareholder's employment was terminated would likely disrupt the settled expectations of many shareholder-employees. As to when shareholder status does end, we join other jurisdictions and conclude that when the parties are governed by a shareholder agreement, shareholder status terminates when the corporation or other purchaser tenders payment for the

shareholder's shares that conforms with the terms of the shareholder agreement. *See Coleman v. Taub*, 638 F.2d 628, 635–37 (3d Cir.1981) (applying Delaware law and holding that terminated shareholder-employee has no right to continue to hold shares in the corporation beyond the time that a value is placed on those shares and the purchase price is tendered in accordance with the contract between the shareholder and the corporation); *Jenkins v. Haworth, Inc.*, 572 F.Supp. 591, 596–97, 601 (W.D.Mich.1983) (holding that the status of shareholder-employee terminated when employment terminated and corporation offered employee the price established by the shareholder agreement for his shares).

On the limited record before us, we cannot determine whether or when Motorwerks made a conforming tender of the purchase price of Drewitz's shares, and we therefore remand to the district court for that determination. If there was a conforming tender of the purchase price for Drewitz's shares, Drewitz's status as a shareholder should be deemed to have terminated at that point.

## II.

Having determined that Drewitz's shareholder status did not end immediately upon termination of his employment, we next consider Motorwerks' argument that Drewitz's claims for ongoing shareholder benefits are barred by res judicata. Drewitz claims two such benefits: the right to an allocation of a proportionate share of Motorwerks' income and of any cash distributions made to shareholders after his employment terminated, and access to Motorwerks' corporate books and records.[6] Motorwerks contends that these

---

**6.** Drewitz's complaint also alleges that he continued as a director after his employment

ended. The court of appeals noted that Drewitz had raised "no shareholder gover-

claims were asserted as a part of *Drewitz I*, or alternatively that Drewitz should have supplemented the complaint in *Drewitz I* to include them, and thus that they are barred by res judicata. The court of appeals held that these claims are not barred by res judicata and, without determining the merits of the claims, we agree.

█ The application of res judicata is a question of law which we review de novo. *Care Institute Inc.–Roseville v. County of Ramsey (CIIR)*, 612 N.W.2d 443, 446 (Minn.2000). Res judicata prohibits parties from raising a claim in a second suit that was, or "could have been," litigated in the earlier action. *See Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

█ We address first Motorwerks' contention that Drewitz's claims for post-employment distributions and access to books and records were actually brought in *Drewitz I*. From our review of the complaints in *Drewitz I* and *Drewitz II*, we conclude that the allegations of the two complaints with respect to breach of the shareholder agreement are different. *Drewitz I* arose from what was essentially an employment dispute between Drewitz and Motorwerks. Drewitz claimed that because Motorwerks breached his employment contract by firing him, he was entitled to a fair value buy out under Minn. Stat. § 302A.751. He also claimed that by firing him, Motorwerks breached its fiduciary duty to him, and breached the implied covenant of good faith and fair dealing. Additionally, although Drewitz raised the issue of future shareholder profits in the complaint in *Drewitz I*, it was only in the context of his alleged wrongful termination. For example, the complaint in

*Drewitz I* alleged that the wrongful termination of Drewitz's employment allowed the individual defendants to "take for themselves the future profits and capital appreciation" that would otherwise have inured to Drewitz. And, the only contract Drewitz claimed had been breached was his employment contract with Motorwerks; the complaint in *Drewitz I* does not allege a violation of the shareholder agreement.

In contrast, the allegations underlying the claim of breach of the shareholder agreement in *Drewitz II* did not arise until after Drewitz had filed suit in *Drewitz I*. Under the shareholder agreement, Motorwerks was obligated to "annually distribute cash to each Shareholder." In *Drewitz II*, Drewitz alleges that since his termination, Motorwerks has made distributions to the other shareholders but not to him. Drewitz also claims that since his employment terminated he has been denied access to Motorwerks' corporate books and records. Drewitz could not have alleged in his complaint in *Drewitz I* that Motorwerks breached the shareholder agreement by failing to make distributions to him after termination of his employment because Drewitz did not know when he served the complaint in *Drewitz I* in January 2000 that Motorwerks would not make distributions to him in 2000 or in later years. We therefore agree with the court of appeals that Drewitz's claim for breach of the shareholder agreement's provisions with respect to distributions and access to corporate books and records was not brought as part of the complaint in *Drewitz I*.

█ Because the allegations of *Drewitz II* with respect to the shareholder agreement did not arise until after Drewitz had filed his first complaint, the only question

nance issues" on appeal, and Drewitz's status as a Motorwerks director after his employ-

ment ended is not before us.

that remains is whether Drewitz's claims are barred here by res judicata because Drewitz should have amended or supplemented his complaint in *Drewitz I* to include them. We hold that Drewitz was not required to supplement his complaint in *Drewitz I* for events occurring after the complaint was filed.

Our rules provide that the court *may* permit a party to serve a supplemental pleading "setting forth transactions, occurrences, or events which have happened since the date of the pleading sought to be supplemented." Minn. R. Civ. P. 15.04. Parties must therefore receive permission from the court to file supplemental pleadings. *Id.* Substantial disruption would result from requiring parties to supplement their complaints in every circumstance until the final judgment in a case to prevent res judicata. In light of the permissive language of Rule 15.04, our reference in *Hauschildt* to a claim that "could have been" brought must be understood to be limited to a claim that existed at the time the first complaint was served. The majority of federal jurisdictions, whose procedural rules are similar to Minnesota's, hold that parties are not required to supplement their complaints to allege claims arising after the complaint was filed in order to prevent those claims from being barred by res judicata. *See, e.g., Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997); *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1357 (11th Cir.1998); *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992). Because the factual circumstances giving rise to Drewitz's claims for breach of the shareholder agreement entitling him to allocations of corporate income, tax distributions, and access to Motorwerks' books and records arose after the complaint in *Drewitz I* was served and Drewitz neither litigated those claims as part of *Drewitz I* nor was obligated to supplement his complaint in

*Drewitz I* to include them, such claims are not barred by the doctrine of res judicata even though judgment was entered on the first complaint.

## III.

■ Finally, we reach Drewitz's claim that Motorwerks is required to purchase his shares at their fair value. Drewitz initially petitioned for, and we granted, review of the court of appeals' determination that Motorwerks had not acted in an unfairly prejudicial manner toward him, nor had Motorwerks breached its fiduciary duty toward him. Because of the procedural posture of the case, review of the merits of Drewitz's complaint would have been inappropriate, and we agreed with Motorwerks that such review was improvidently granted. But because Motorwerks raised the question of res judicata in its cross-petition for review, in the interest of judicial economy we instructed the parties to brief whether Drewitz's claim for a fair value buyout under Minn.Stat. § 302A.751 is also barred by res judicata. We address the claim here under our inherent authority under Minn. R. Civ.App. P. 103.04 ("The appellate courts may * * * take any other action as the interest of justice may require.").

Like his claim for breach of the shareholder agreement, Drewitz's claim in *Drewitz II* that he is entitled to a buyout at fair value is based on Motorwerks' alleged behavior *after* Drewitz's employment was terminated. Indeed, Drewitz could not have claimed breach of fiduciary duty in *Drewitz I* for Motorwerks' failure to tender payment within 90 days of the "Event of Purchase" because when Drewitz served his complaint in January 1999, the 90 days provided by the shareholder agreement for purchase of his shares following the termination of Drewitz's employment had not yet run. Nor could

Drewitz have supplemented his complaint in the first action to allege a claim based on Motorwerks' alleged failure to tender payment after the court of appeals' decision in *Drewitz I* because those alleged facts did not arise until after the litigation in *Drewitz I* ended. Thus, the allegations underlying Drewitz's claim for purchase of his shares at their fair value did not arise until after Drewitz had served his complaint, and his claim for purchase of his shares at their fair value is therefore not barred by res judicata.

Nor could Drewitz have returned to Ramsey County District Court, as the district court in *Drewitz II* ordered, to enforce either the judgment entered in *Drewitz I* or the settlement of the employment claim that followed. The judgment entered by the district court in *Drewitz I* dismissed all of Drewitz's claims on summary judgment, except for his claim that his employment agreement was breached. *Drewitz I*, 2001 WL 436223, at *3. The district court in *Drewitz I* did not order Motorwerks to purchase Drewitz's shares, nor did the district court establish the amount Motorwerks was to pay Drewitz for his shares. And there is no evidence in the record before us that the settlement agreement that resolved Drewitz's claim for breach of his employment agreement obligated Motorwerks to purchase Drewitz's shares or established the amount Motorwerks was to pay for the shares. We therefore conclude that Drewitz's claim for purchase of his Motorwerks shares at their fair value is not barred by res judicata.

Since Drewitz's shareholder status did not terminate automatically upon termination of his employment, we remand to the district court for further proceedings. On remand, the district court must determine whether Motorwerks or any other shareholder ever made a conforming tender for Drewitz's shares that terminated Drewitz's shareholder status. The district court must also determine whether Motorwerks breached the shareholder agreement by failing to make distributions to Drewitz or by denying Drewitz access to Motorwerks' books and records while he remained a shareholder, and whether Motorwerks engaged in behavior that was unfairly prejudicial to Drewitz while he remained a shareholder, entitling Drewitz to purchase of his shares at their fair value under Minn.Stat. § 302A.751.

Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent with this opinion.

PAGE, J., took no part in the consideration or decision of this case.