# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1351

John S. Drewitz,
Appellant,

vs.

Motorwerks, Inc., et al.,
Respondents.

**Filed June 22, 2015**
**Affirmed in part, reversed in part, and remanded**
**Hooten, Judge**

Hennepin County District Court
File No. 27-CV-04-008927

Paul W. Chamberlain, Ryan R. Kuhlmann, Chamberlain Law Firm, Wayzata, Minnesota (for appellant)

Michael H. Streater, W. Knapp Fitzsimmons, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Minge, Judge.*

# S Y L L A B U S

1.      A director's self-distribution of corporate funds that renders the corporation unable to satisfy a pending claim of a corporate creditor is a breach of the director's fiduciary duty to that creditor.

2.      An action against a corporate director or shareholder seeking to recover a judgment already obtained against the corporation is equivalent to a creditor's bill at

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

equity and is subject to the ten-year statute of limitations for actions upon judgments under Minn. Stat. § 541.04 (2014).

3.    The ten percent preverdict interest rate under Minn. Stat. § 549.09, subd. 1(c)(2) (2014), applies to all judgments entered on or after August 1, 2009, regardless of whether any underlying conduct or litigation occurred prior to that date.

## O P I N I O N

**HOOTEN**, Judge

This appeal arises out of protracted shareholder litigation between appellant, a former minority shareholder of respondent-corporation, and respondents, the corporation, its corporate director and majority shareholder, and other former shareholders. Appellant argues that the district court erred by failing to hold respondent-corporate director personally liable for breach of his fiduciary duty as a corporate director, and by failing to comply with this court's instructions on remand from a previous appeal. By notice of related appeal, respondents challenge the district court's award of preverdict interest in entering judgment against respondent-corporation. As to appellant's appeal, we affirm in part, reverse in part, and remand. As to respondents' related appeal, we affirm.

## FACTS

In 1990, respondent Motorwerks, Inc., hired appellant John Drewitz as a car salesman and later promoted him to general manager in 1993. In 1995, Drewitz and Motorwerks entered into an employment agreement, which provided the terms of Drewitz's employment as vice-president and general manager of Motorwerks through March 1999. Drewitz also executed a shareholder agreement with Motorwerks and respondent R. Jack Walser, the sole shareholder in Motorwerks at that time. That

2

agreement provided that Drewitz would purchase 20% of the outstanding shares of Motorwerks. It also granted Drewitz three annual options to purchase additional shares. Drewitz exercised one of these options, increasing his total stake in Motorwerks to 30%. The shareholder agreement provided that distributions would be paid to all shareholders on a pro rata basis.

In 1996, respondents Paul and Andrew Walser, Jack Walser's sons, each purchased a 15% stake in Motorwerks. In December 1998, Paul Walser terminated Drewitz's employment with Motorwerks and offered Drewitz a severance agreement, which Drewitz rejected. Drewitz instead sued Motorwerks and Jack and Paul Walser, seeking a fair-value buyout of his shares due to breaches of the employment agreement, the Walsers' fiduciary duties to Drewitz as a shareholder, and the covenant of good faith and fair dealing. The parties settled the claims asserting breach of contract. The district court granted summary judgment in favor of Motorwerks and the Walsers on Drewitz's remaining claims. Drewitz appealed and we affirmed, holding that the shareholder agreement provided for Motorwerks to buy back Drewitz's shares at book value upon termination of his employment. *Drewitz v. Walser* (*Drewitz I*), No. C3-00-1759, 2001 WL 436223, at *3–6 (Minn. App. May 1, 2001). Between 1999 and 2004, during the litigation of *Drewitz I* and continuing in its aftermath, Motorwerks made a series of tender offers to Drewitz for his shares, which Drewitz rejected because he believed that they did not conform to the shareholder agreement.

In May 2004, Drewitz filed another lawsuit against Motorwerks and its shareholders at the time, Jack, Paul, and Andrew Walser. Asserting that the Walsers had acted with unfair prejudice toward him as a shareholder after our decision in *Drewitz I*,

3

Drewitz again sought a fair-value buyout of his outstanding shares. Drewitz further claimed that respondents had breached their fiduciary duty to him as a shareholder. Drewitz also asserted the breach of contract claim involved in this appeal: that respondents breached the shareholder agreement by failing to pay him distributions in accordance with his stock ownership while the buyout of his shares was pending. Respondents contended that these claims were precluded by our decision in *Drewitz I* and were without merit because Drewitz's shareholder status vanished when respondents terminated his employment.

While litigation proceeded on this second lawsuit, the Walsers and Peter Hasselquist entered into a July 2004 "Contingent Walser Asset and Liability Split-Up Agreement." In the agreement, Jack Walser and Hasselquist agreed to take ownership of Motorwerks and two other Walser dealerships, while Paul and Andrew Walser would control all remaining Walser businesses. The agreement stated that the parties would "split the costs associated with asserted and unasserted claims for Walser business actions" on or before the closing date, and expressly acknowledged "the existence of lawsuits by John Drewitz." At the end of December 2004, Paul and Andrew Walser transferred all their shares of Motorwerks stock to Jack Walser. Hasselquist acquired a 20% stake in Motorwerks, leaving Jack Walser as the majority shareholder with 80% of the outstanding stock.

In September 2004, the district court dismissed Drewitz's complaint primarily on res judicata grounds, and he appealed. In a December 2005 decision, this court affirmed in part and reversed in part, reinstating Drewitz's breach of contract claim based upon respondents' subsequent failure to pay him shareholder distributions. *Drewitz v.*

4

*Motorwerks, Inc.* (*Drewitz II*), 706 N.W.2d 773, 780–82 (Minn. App. 2005), *aff'd in part, rev'd in part*, 728 N.W.2d 231 (Minn. 2007). We concluded that this claim was not precluded under res judicata principles by the resolution of *Drewitz I*. *Id.* We also held that Drewitz, notwithstanding the termination of his employment with Motorwerks, remained a shareholder with the right to corporate distributions. *Id.* at 783–84. Within ten days of our decision in *Drewitz II*, Motorwerks again tendered payment for Drewitz's shares, which we later held to have finally terminated Drewitz's shareholder status in Motorwerks. *Drewitz v. Motorwerks, Inc.* (*Drewitz IV*), No. A09-1529, 2010 WL 1541436 at *5–6 (Minn. App. Apr. 20, 2010), *review denied* (Minn. July 20, 2010).

In February 2006, two months after this court issued *Drewitz II*, Motorwerks and Jack Walser entered into an agreement to sell substantially all of Motorwerks' assets to a third-party buyer for nearly $33 million. The purchase agreement provided that Motorwerks, Jack Walser, and Hasselquist would indemnify the third party against any liability related to Drewitz's lawsuit. The sale closed in May 2006. In June 2006, Jack Walser executed an agreement with Hasselquist indemnifying Hasselquist from any liability relating to Drewitz's still-pending lawsuit.

Soon thereafter, Jack Walser and Hasselquist, the only remaining directors of Motorwerks, decided to distribute nearly all of the income from the asset sale to themselves as the two remaining Motorwerks shareholders. Tax records show that $21.3 million was distributed to the two, with Jack Walser receiving over $17 million. He also received a $70,000 BMW convertible in connection with the sale. Hasselquist claimed that he and Jack Walser decided to make the distribution after consulting with several financial and legal professionals, and determined that, based upon the recommendations

5

of those professionals and "[their] own review and analysis," Motorwerks could distribute over $21 million in 2006 and still satisfy its debts in the ordinary course of business. Jack Walser testified that, without Motorwerks' BMW franchise rights, "there was no point in leaving the money" in what had become a "shell corporation." The record does not include any corporate documentation authorizing this transfer. After the 2006 distribution, Motorwerks retained only $225,000 in cash, which dwindled to $169,108 by the end of 2006, and the valuation of its assets dropped from nearly $20 million to $690,657. Motorwerks made further distributions in 2007, 2010, and 2012, totaling nearly $600,000. As majority shareholder, Jack Walser received distributions in the amount of $325,600 in 2007, $80,000 in 2010, and $59,083 in 2012, leaving the corporation with no funds.

As Jack Walser and Hasselquist began to wind down Motorwerks' affairs, the supreme court granted review of *Drewitz II* in February 2006. In its February 2007 opinion, the supreme court affirmed our decision that Drewitz's shareholder status did not automatically terminate upon his loss of employment and that his breach of contract claim was not barred by res judicata. *Drewitz v. Motorwerks, Inc.* (*Drewitz III*), 728 N.W.2d 231, 238–41 (Minn. 2007). The supreme court remanded for the district court to decide, among other things, whether Motorwerks had made a conforming tender offer to Drewitz and whether Motorwerks breached the shareholder agreement by subsequently failing to pay out distributions to Drewitz while he owned shares. *Id.* at 241.

On remand, the district court determined that Motorwerks had made a conforming tender offer for Drewitz's shares in December 2005. Following a jury trial, the district court dismissed Drewitz's claim asserting a breach of the shareholder agreement and

6

denied his motion for judgment as a matter of law. Drewitz appealed, and this court affirmed the district court's determination that Motorwerks made a conforming tender offer for the book value of Drewitz's shares in December 2005. *Drewitz IV*, 2010 WL 1541436, at *5–6. But, we reversed the denial of Drewitz's motion for judgment as a matter of law and remanded for the district court to determine whether respondents breached the shareholder agreement by failing to pay Drewitz his share of Motorwerks' distributions. *Id.* at *3–6.

After this second remand, the district court held a bench trial and concluded, in part, that Motorwerks did not breach the shareholder agreement by failing to make shareholder distributions to Drewitz between March 1999 and December 2005. Drewitz appealed, and we reversed the district court's ruling that Motorwerks had not breached the shareholder agreement, concluding that "[t]he shareholder agreement provided that shareholders would receive annual distributions" and that Motorwerks breached its promise "to make distributions to Drewitz while he was a shareholder." *Drewitz v. Motorwerks, Inc.* (*Drewitz V*), No. A12-0604, 2012 WL 5476148, at *7 (Minn. App. Nov. 13, 2012), *review denied* (Minn. Jan. 29, 2013). We therefore remanded "for a calculation of [Drewitz's] associated damages" in connection with Motorwerks' breach of the shareholder agreement. *Id.*

Upon this third remand, the district court determined that Motorwerks, and not the Walsers, was liable for breaching the shareholder agreement. It found that Motorwerks failed to pay Drewitz $3.9 million in distributions and, after calculating preverdict interest, entered judgment against Motorwerks for $7.9 million on July 24, 2013.

Until this point in the litigation, the record indicates that Drewitz appears to have been unaware that the proceeds of the 2006 asset sale had been distributed to Jack Walser and Hasselquist. Drewitz had earlier moved to compel discovery of Motorwerks' financial and corporate records, especially those relating to its 2006 asset sale, several times after the supreme court's 2007 remand in *Drewitz III*. The district court had reserved ruling on this motion to compel, but, in September 2010, it ultimately compelled respondents to turn over the *final* sales documents. But, these documents did not include the corresponding financial or corporate records that would have evidenced the four distributions between 2006 and 2012. In Drewitz's arguments to the district court regarding calculation of damages after *Drewitz V*, he claimed that the sale assets had already been distributed by Motorwerks. Respondents countered by contending that "these allegations [were] unsubstantiated" and "[w]hether Motorwerks will be able to satisfy any judgment that is entered against it remains to be seen." In August 2013, Drewitz finally discovered that Motorwerks no longer had any remaining assets when his writ of execution upon the judgment was returned unsatisfied, Motorwerks provided Drewitz with discovery answers that included tax returns showing Motorwerks' distributions between 2006 and 2012, and Drewitz was permitted to depose Jack Walser regarding these distributions.

Drewitz then sought to impose liability upon Jack Walser for the unpaid distributions. He successfully amended his complaint to add fraudulent transfer, veil piercing, and breach of contract claims. Both parties moved for summary judgment on the new claims in Drewitz's amended complaint. Before the district court ruled on those motions, Drewitz moved again to amend the pleadings, seeking to add a claim alleging

8

that Jack Walser and Motorwerks violated the Minnesota Business Corporations Act (MBCA) by causing Motorwerks to issue unlawful distributions. The district court granted summary judgment in favor of respondents on all of Drewitz's claims and denied Drewitz's motion to amend the pleadings. This appeal by Drewitz and a related appeal by respondents followed.

## ISSUES

I.      Did the district court err by granting summary judgment in favor of respondents on Drewitz's claim for breach of fiduciary?

II.      Did the district court err in its calculation of preverdict interest in its judgment against Motorwerks?

## ANALYSIS

### I.

Drewitz argues that the district court erred as a matter of law by granting summary judgment for respondents on his breach of fiduciary duty claim against Jack Walser.[1] "On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011); *see also* Minn. R. Civ. P. 56.03. In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012). When the parties file cross-motions for summary judgment and do not appear to dispute the relevant material facts, we review the district

---

[1] All of the postjudgment claims raised by Drewitz in his amended complaint were asserted against only Jack Walser. Drewitz is not seeking recovery on a breach of fiduciary duty theory against Peter Hasselquist or Paul and Andrew Walser.

court's application of the law de novo. *Amica Mut. Ins. Co. v. Wartman*, 841 N.W.2d 637, 640 (Minn. App. 2014), *review denied* (Minn. Mar. 18, 2014).[2]

## A. Breach of Fiduciary Duty

In his amended complaint, Drewitz asserted that he was entitled to relief under *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863 (Minn. 1981). There, the supreme court held that when a corporation is insolvent or on the verge of insolvency, its directors and officers who are repaid for their antecedent corporate loans have breached their fiduciary duties to the corporation's outside creditors by giving themselves a "preference" over these creditors. *Id.* at 869; *see also Farmers Co-op Ass'n of Bertha, Minn. v. Kotz*, 222 Minn. 153, 158, 23 N.W.2d 576, 579 (1946) ("When a corporation is insolvent, its directors cannot, by taking advantage of their fiduciary relation, secure to themselves a preference over other creditors."), *abrogated on other grounds by Rubey v. Vannett*, 714 N.W.2d 417 (Minn. 2006). A "preference" occurs when "a transfer or encumbrance of corporate assets [is] made while the corporation is insolvent or verges on insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests." *Snyder*, 305 N.W.2d at 869. When a creditor alleges a director's self-payment was a

---

[2] The supreme court has not deviated from a de novo standard of review of legal issues "simply because the claims at issue are for equitable relief." *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 861 (Minn. 2011). *But see Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (declining to state whether a more deferential standard of review "might" be applicable when district court balances equities but does not award equitable relief). Because the district court did not weigh the equities in granting summary judgment for Motorwerks on Drewitz's breach of fiduciary duty claim, we review its legal determination de novo. *See SCI*, 795 N.W.2d at 861.

preference, corporate executives bear the burden of showing that the payment "was made in good faith and was not a preference." *Id.*

The essence of Drewitz's claim is that Jack Walser, as a director of Motorwerks, breached his fiduciary duty to Drewitz by draining substantially all the corporate assets by paying himself several shareholder distributions while the parties litigated Drewitz's claim for his share of prior shareholder distributions.[3] The district court rejected this argument and granted respondents' motion for summary judgment on this claim based on its conclusion that *Snyder* did not apply on these facts.

The parties first dispute whether Jack Walser owed Drewitz a fiduciary duty at the time of the Motorwerks distributions. Drewitz argues that *Snyder* applies to creditors whose pending claims are reduced to judgment after a director engages in self-dealing transactions. The district court held that there was no fiduciary relationship because, at the time of the distributions, Drewitz was a "future creditor" who had not yet reduced his claim to judgment. Respondents urge that we adopt the district court's conclusion and hold that Drewitz was not a "general creditor[] of the corporation" at the time of the distributions and was therefore not in a fiduciary relationship with Jack Walser. *Id.*

We are not persuaded by respondents' argument. In *Snyder*, the supreme court did not indicate that a creditor has to reduce its claim to a judgment prior to the distribution in order to recover. The creditors in that case obtained judgments against the defendant-

---

[3] We note that this type of claim is expressly authorized by the MBCA. The statute provides that a creditor may bring an action when its claim "has been reduced to judgment and an execution thereon has been returned unsatisfied," and empowers the district court to "grant any equitable relief it deems just and reasonable in the circumstances." Minn. Stat. § 302A.751, subd. 1(c) (2014).

11

corporation years after the corporation had become insolvent and at least one alleged preferential transfer had taken place. *Id.* at 866, 869. The situation here is materially indistinguishable. Furthermore, Jack Walser knew of Drewitz's claim and found it sufficiently credible to shield others from it—he agreed to split any liability associated with Drewitz's lawsuit with his two sons and indemnified both the purchaser of Motorwerks' assets and Peter Hasselquist from liability. Motorwerks undertook a contractual obligation to pay Drewitz shareholder distributions, and Drewitz filed suit in 2004 seeking to vindicate his right to those payments. Drewitz's belated receipt of a judgment was mainly due to the incredibly protracted litigation in this case, much of which was due to adverse district court rulings that he three times successfully appealed. Drewitz was a "creditor" within the meaning of *Snyder*.

Drewitz further argues that Motorwerks was caused to be "insolvent, or on the verge of insolvency" by the distributions, so as to create the necessary fiduciary duty between himself and Jack Walser. *See id.* at 869. We agree. Generally, a corporation becomes insolvent when it is no longer able to pay its debts in the ordinary course of business. Minn. Stat. § 302A.551, subd. 1(a) (2014) (noting the definition of insolvency applicable to distribution decisions under the MBCA); *see also Daniels v. Palmer*, 35 Minn. 347, 349, 29 N.W. 162, 164 (1886) (defining "insolvency" as the "inability to pay one's debts in the ordinary course of business" that "must be construed with reference to the business conducted by the person or entity"); *Black's Law Dictionary* 867 (9th ed. 2009) (defining "insolvency" as "[t]he condition of being unable to pay debts as they fall due or in the usual course of business" or "the inability to pay debts as they mature").

12

It is undisputed that, in 2006, Jack Walser caused Motorwerks to sell nearly all of its assets, cease operating as a car dealership, and then distribute $21.3 million to himself and Hasselquist. While it no longer sold BMW vehicles, Motorwerks retained its corporate registration and maintained funds that were used to pay *other* creditors. Yet, it continued to make distributions to its remaining shareholders, Jack Walser and Hasselquist, resulting in the complete depletion of these funds by 2012.

But, while Jack Walser made provision for other creditors and himself and Hasselquist as shareholders, he made none for Drewitz and his pending claim. Respondents assert that Drewitz's claim to a 30% share of Motorwerks' distributions between 1999 and 2005 was "readily ascertainable" at nearly $4 million by simply applying Drewitz's ownership percentage to the yearly distributions. By selling the car dealership and distributing the proceeds, respondents depleted Motorwerks of the assets to satisfy Drewitz's share, let alone the preverdict interest on any resulting judgment. And that is what happened—Motorwerks could not satisfy the $7.9 million judgment due to the distributions caused by its directors. By ignoring a "readily ascertainable" claim, Jack Walser engaged in preferential dealing that rendered Motorwerks unable to pay its debts in the ordinary course of business after making the distributions, causing Motorwerks' insolvency.

The primary question is whether corporate distributions, as opposed to a director's use of corporate funds to repay debt he or she is owed by the corporation, can constitute a *breach* of the fiduciary duty that directors owe to creditors. Respondents argue that because Walser did not specifically prefer the repayment of his own corporate debt over Drewitz's claim, he was free to drain Motorwerks of its assets without having to consider

13

the impact these distributions would have on Drewitz's pending claim. For support, respondents cite an Eighth Circuit decision for the broad proposition that a director's distribution of assets to himself as a shareholder does not breach that director's fiduciary duty to any corporate creditors because, under *Snyder*, that duty can only be breached by the preferential repayment of *debt* owed to the director by the corporation. *Helm Fin. Corp. v. MNVA R.R., Inc.*, 212 F.3d 1076, 1082 (8th Cir. 2000). This argument is unpersuasive. First, Eighth Circuit decisions on matters of state law are merely persuasive and are not precedential. *Regner v. Nw. Airlines, Inc.*, 652 N.W.2d 557, 563 (Minn. 2002). And, this reading of *Snyder* has not been followed by any Minnesota appellate decision.

More importantly, respondent's reliance on *Helm* is not persuasive given the facts before us. The distribution in *Helm* differed from the distribution here, where the two directors that decided to declare a distribution were also the two shareholders receiving that distribution. While the claim in *Helm* was brought against two corporate directors, the decision does not indicate that only those directors received the distributions in their role as shareholders. *See* 212 F.3d at 1078 ("[The corporation] . . . approved the distribution of [stock] to [the corporation's] shareholders in proportion to the percentage of stock they owned in [the corporation]."). The self-dealing distributions that occurred in this case did not occur in *Helm*. *See id.* at 1082 ("There are no allegations of self-dealing by defendants.").

Respondents provide no explanation for the logical consequence of their argument: that Jack Walser would be liable for breach of fiduciary duty under *Snyder* if he had been repaying himself for past corporate debts, yet here he did not breach that

14

duty by liquidating the corporation's assets and distributing a large majority of the corporate funds to himself without *any* benefit to the corporation, such as the satisfaction of antecedent debt. As a matter of black-letter law, "[s]tockholders of an insolvent corporation cannot participate in the distribution of its assets until the claims of creditors are paid" because "the only interest a stockholder has in the property of a corporation is the interest in any surplus over and above what is required to pay its depositors and creditors." 15A William Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7417, at 169 (Larry Edmonson ed., rev. ed. 2000). Corporate dissolution under the MBCA echoes this principle, requiring corporate directors to "pay or make provision for the payment of all known debts, obligations, and liabilities of the corporation" before distribution of remaining assets can be made to shareholders. Minn. Stat. § 302A.725, subds. 1(b), 3 (2014).

As stated by Justice Simonett, "[t]ransactions involving corporations and their executives . . . are to be regarded with skepticism by the courts and closely scrutinized." *Snyder*, 305 N.W.2d at 867. Here, the undisputed facts show that Jack Walser and Hasselquist dismantled Motorwerks' business structure and then distributed nearly all of the corporation's remaining liquid capital to themselves. If the prohibition on "preferences" outlined in *Snyder* prevents corporate directors from favoring their *own* bona fide debts over those of outside creditors with "otherwise similarly secured interests," *see id.* at 869, this prohibition similarly extends to directors who knowingly "prefer" their share of corporate profits over the rights of a pending claimant. The dissent in *Helm* raised the same concerns:

> Whether the transaction was a loan or a distribution, when officers or directors act to the detriment of a corporate creditor to benefit themselves, they have breached their fiduciary duty to the creditors. They have used their special role in the corporation to obtain a preference over the creditors. After all, in the ordinary liquidation of a corporation, the creditors get paid before redemption of shares of stock. Here, the transaction put assets into the hands of the stockholders to the ultimate detriment of the creditors, thus endowing the officers and directors with an advantage over other creditors.

212 F.3d at 1083 (Bright, J., dissenting). Jack Walser's decision to ignore Drewitz's pending claim and siphon corporate funds *without* benefitting the corporation is an even more egregious breach of fiduciary duty than that of the corporate directors repaying themselves for corporate debt in *Snyder.* Accordingly, we conclude that Jack Walser breached his fiduciary duty to Drewitz by causing Motorwerks to distribute assets to himself and Hasselquist for the six-year period of 2006 to 2012.

Drewitz also argues that his breach of fiduciary duty claim in relation to distributions made in 2006 and 2007 is not barred by the six-year statute of limitations under Minn. Stat. § 541.05, subd. 1. The district court concluded that this statute barred Drewitz's claim because the 2006 and 2007 distributions occurred more than six years before Drewitz's August 2013 amended complaint.

By its plain language, Minn. Stat. § 541.05, subd. 1, does not apply to Drewitz's claim for breach of fiduciary duty. Drewitz is not seeking recovery under one of the causes of action enumerated in that section; rather, Drewitz raises an equitable claim to collect on an *already-obtained* July 2013 judgment against Jack Walser in addition to Motorwerks. Actions asserting equitable claims against shareholders or directors to recover judgments obtained against a corporate entity are equivalent to "creditor's bills."

16

*See Wartman*, 841 N.W.2d at 642 ("The veil-piercing action is in the nature of a creditor's bill . . . ."); *see also Snyder*, 305 N.W.2d at 870 n.2 (noting that the breach of fiduciary duty action was "in the nature of a creditor's bill"). The applicable statute of limitations for such claims is *not* the six-year period found in Minn. Stat. § 541.05, subd. 1, but rather the ten-year period for actions upon judgments under Minn. Stat. § 541.04 (2014).[4] *See Wartman*, 841 N.W.2d at 640–41. That is because this action seeks equitable enforcement of a judgment, and therefore can only be pursued once a party has already obtained a judgment that it cannot enforce at law. *Id.* at 641 (noting that "a creditor's bill is ancillary to the original judgment," and is brought "for the purpose of obtaining satisfaction of[] an existing judgment" (quotation omitted)).

This ten-year statute of limitations begins running either when the judgment is docketed or when execution upon the judgment is returned unsatisfied, depending on what type of creditor's bill the action is considered to be under equity principles. *See Lind v. O.N. Johnson Co.*, 204 Minn. 30, 37, 282 N.W. 661, 666 (1938). Deciding which date applies here is unnecessary, as the district court granted Drewitz's motion to amend his complaint to add his breach of fiduciary duty claim five months after judgment was docketed against Motorwerks. Accordingly, Drewitz's claim is not time-barred.

We conclude that the fiduciary duty of directors described in *Snyder* also prohibits directors of insolvent or nearly insolvent corporations from distributing corporate assets

---

[4] We further note that our conclusion is consistent with other state courts that have rejected timeliness challenges asserting that general statutes of limitation barred similar claims seeking recovery of already-obtained judgments from individuals. *See Oceanics Schs., Inc. v. Barbour*, 112 S.W.3d 135, 145–46 (Tenn. Ct. App. 2003) (holding that plaintiff's veil-piercing claim was controlled by ten-year statute of limitations addressing actions on judgments); *Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 925 (Mo. Ct. App. 1989) (same).

to themselves without first satisfying the claims of the corporation's creditors. Accordingly, we reverse the district court's grant of summary judgment in favor of respondents and direct that summary judgment be entered in favor of Drewitz. However, because "[t]he fashioning of an equitable remedy is committed to the sound discretion of the [district] court," we remand for the district court to determine the remedy necessary "to restore the injured party to the position it occupied before the breach of fiduciary duty." *Shepherd of the Valley Lutheran Church of Hastings v. Hope Lutheran Church of Hastings*, 626 N.W.2d 436, 443 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). This remedy may include, but is not limited to, an order by the district court amending its July 24, 2013 judgment to include Jack Walser as a party from whom Drewitz can seek recovery of his $7.9 million award.

## B. Remaining Postjudgment Claims

On appeal, Drewitz further argues that the district court erred by entering summary judgment against him on his claims of veil piercing and fraudulent transfer, and that the district court also erred by denying his second motion to amend his complaint to add claims asserting a violation of the MBCA. However, our ruling on Drewitz's breach of fiduciary duty claim disposes of his appeal to the extent Drewitz seeks to enforce his judgment against the personal assets of Jack Walser. "[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us." *Lipka v. Minn. Sch. Employees Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn. 1996). As addressing these issues is "unnecessary to the resolution of the controversy in question," *id.*, we decline to express any opinion on the district court's disposal of Drewitz's remaining claims against Jack Walser.

18

### C. July 24, 2013 Judgment Against Motorwerks

Drewitz also appeals the district court's decision after the remand in *Drewitz V* to enter judgment against Motorwerks only, arguing that the district court erroneously deviated from this court's remand instructions and should have entered judgment against all of the individual defendants named in his original complaint—Jack, Paul, and Andrew Walser—in addition to Motorwerks. He raises numerous legal and factual theories asserting error, all of which are unpersuasive. "On remand, a district court must execute [an appellate court's] mandate strictly according to its terms and lacks power to alter, amend, or modify that mandate." *Rooney v. Rooney*, 669 N.W.2d 362, 371 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003). Our decision in *Drewitz V* made clear that *Motorwerks* had an obligation to distribute corporate earnings to Drewitz and that *Motorwerks* breached that obligation. 2012 WL 5476148, at *7. Accordingly, it follows that, upon remand for entry of judgment after *Drewitz V*, any resulting damages would be paid only by Motorwerks. While we now hold that judgment may be entered against Jack Walser due to his breach of fiduciary duty, the district court did not err on remand by entering judgment only against Motorwerks.

### II.

In their related appeal, respondents argue that the district court's judgment against Motorwerks failed to award the proper amount of preverdict interest. We review an award of preverdict interest de novo. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 390 (Minn. App. 2004), *review denied* (Minn. Aug. 25, 2004).

In calculating the judgment amount, the district court held that Drewitz was entitled to $3,960,661 as his share of the distributions issued by Motorwerks between

1999 and 2005. The district court then applied two different preverdict interest rates to this damages amount: six percent annual interest under Minn. Stat. § 334.01, subd. 1 (2014), for all distributions owed to Drewitz from the date of the distributions until Drewitz commenced his lawsuit on May 25, 2004, and ten percent annual interest under Minn. Stat. § 549.09, subd. 1(c)(2) (2014), after that date. The result was a final judgment of $7,914,637.98 against Motorwerks.

Respondents first argue that the district court should have awarded interest for the entire preverdict period at the six percent rate provided by Minn. Stat. § 334.01, subd. 1. Respondents have forfeited this argument, as they did not raise the potential application of this statute before the district court. As a general rule, a party may not raise new issues for the first time on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). And, while respondents claim that this is a purely legal question, the parties both argue at length whether Drewitz's claim was liquidated and readily ascertainable. *See Hogenson v. Hogenson*, 852 N.W.2d 266, 274 (Minn. App. 2014) (holding that preverdict interest is calculated under section 334.01 when "damages are ascertainable or liquidated"). "[W]hether a claim is liquidated, readily ascertainable, or unliquidated" is a question of fact to be resolved by the factfinder. *Trapp v. Hancuh*, 587 N.W.2d 61, 63 (Minn. App. 1998). Without litigation of this issue in the district court, it is not properly before us.

Respondents further argue that the district court erred by applying the ten percent interest rate under Minn. Stat. § 549.09 (2014) because the statute's interest rate was raised to ten percent in 2009, five years after the complaint was filed in this case and ten years after Motorwerks first failed to pay shareholder distributions to Drewitz. "The retroactivity of a statute is a matter of statutory interpretation, which we review de novo."

20

*State v. Basal*, 763 N.W.2d 328, 335 (Minn. App. 2009). In its current form, the statute provides that preverdict interest "shall be computed" at ten percent per year if the judgment or award is over $50,000. Minn. Stat. § 549.09, subd. 1(b), (c)(2). The legislation amending section 549.09 to increase the interest rate to ten percent provided that "[t]his section is effective August 1, 2009, and applies to judgments and awards finally entered on or after that date." 2009 Minn. Laws ch. 83, art. 2, § 35, at 1055.

We conclude that the district court's imposition of the ten percent interest rate for a judgment entered after August 1, 2009 is not a "retroactive" application of section 549.09. While this action was initiated before the 2009 amendment, judgment was finally entered, and interest was therefore awarded, well after the statute had been amended. Moreover, we have previously directed a district court to apply the ten percent interest rate under section 549.09 to a judgment when the underlying verdict and injurious conduct occurred before the effective date of the 2009 amendment. *See Cnty. of Washington v. TMT Land V, LLC*, 791 N.W.2d 132, 134–35, 138 (Minn. App. 2010). The statute is clear: judgments and awards finally entered after August 1, 2009, receive the benefit of the interest rates set by the legislature on that date. Accordingly, we affirm the district court's award of preverdict interest.

## D E C I S I O N

Because the district court erred as a matter of law by denying Drewitz's motion for summary judgment on his breach of fiduciary duty claim against Jack Walser, and because the relevant material facts are undisputed, we reverse the district court's grant of summary judgment on this claim in favor of respondents and direct that the district court enter summary judgment in favor of Drewitz. On remand, the district court, sitting as a

21

court of equity, may fashion whatever equitable remedy it deems necessary under the circumstances to rectify Jack Walser's breach of fiduciary duty. This includes, but is not limited to, amending the judgment against Motorwerks to include Jack Walser as a party from whom Drewitz can seek recovery of his $7.9 million award.

We affirm the district court's post-*Drewitz V* entry of judgment against Motorwerks. As to respondents' related appeal, we affirm the district court's award of preverdict interest.

**Affirmed in part, reversed in part, and remanded.**