*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1892**

Grefe Construction, Inc.,
Appellant,

vs.

Double J Concrete & Masonry, Inc.,
Respondent.

**Filed July 18, 2016
Affirmed; motion denied
Stauber, Judge**

Kandiyohi County District Court
File No. 34-CV-14-367

Peter M. Waldeck, Lindsey J. Woodrow, Waldeck Law Firm, P.A., Minneapolis, Minnesota (for appellant)

William L. Davidson, Jason R. Prochnow, João C. Medeiros, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota; and

Jessica K. Allen, Pfefferle Kane, L.L.P., Minneapolis, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

In this action by appellant-contractor against respondent-masonry-subcontractor for negligent installation, appellant argues that the district court erred by granting

summary judgment to respondent because the controlling building code is subject to alternative interpretations. Appellant also contends that the district court abused its discretion by refusing to accept the late deposition of one of appellant's experts. After the parties filed their briefs in this matter, respondent moved to strike portions of appellant's principal brief and reply brief. We affirm the summary judgment in favor of respondent and deny the motion to strike as moot.

**FACTS**

In 2003, Daniel and Janet Costello hired appellant Grefe Construction to remodel and construct their lake home. Appellant subsequently contracted with respondent Double J Concrete & Masonry, Inc. to install stone-veneer siding to the home. It is undisputed that respondent installed a single layer of Grade 15 asphalt saturated felt paper (grade 15 felt) as the weather barrier between the stone veneer siding and the oriented strand board (OSB) wall sheathing. Specifically, respondent applied the felt over a layer of OSB sheathing, secured a lath to the felt, and applied a scratch coat of either plaster or mortar to the lath. Respondent then adhered the stone veneer siding to the scratch coat.

Construction on the home was completed in August 2004. The Costellos later observed signs of water/moisture intrusion in their home, which ultimately required replacement of all the stone-veneer siding on the home. The Costellos filed a demand for arbitration against appellant. Following arbitration in August 2012, the Costellos were awarded approximately $500,000 for the repairs, remediation, and forensic investigation incurred arising from the damage to their home, as well as approximately $50,000 in

costs, attorney fees, and expert-witness costs. The arbitration award allocated damages between appellant and respondent, apportioning to respondent approximately $300,000 in damages and approximately $30,000 in costs and fees.

In July 2014, appellant brought this action against respondent for contribution, alleging that respondent was negligent in the installation of the stone-veneer siding because the grade 15 felt installed behind the adhered stone veneer did not satisfy the applicable building code. Respondent moved for summary judgment, arguing that it was required to install the stone-veneer siding in compliance with International Residential Code (IRC) § R703.7 (2000), which requires that one layer of grade 15 felt be used when installing stone veneer siding. In response, appellant claimed that respondent was required to install the stone veneer siding in compliance with IRC § R703.6, which requires that two layers of building paper classified as "Grade D paper" be installed behind the adhered stone veneer.

The district court found that "[t]he only real issue to be determined . . . in this matter is which section of the [IRC] applied to the installation of the stone veneer siding, i.e. whether the use of the [g]rade 15 [f]elt . . . was appropriate under the [IRC]." Although appellant claimed that the "'battle of experts' on the issue of which [IRC] section applies creates an issue of fact," the district court concluded that "what the experts believe the [IRC] says is not the issue" because a determination of the applicable [IRC] provision is solely an issue of statutory construction. The district court then found that section R703.7 governed, and specified that grade 15 felt be used during construction. Because there was no dispute that respondent used grade 15 felt in the

3

construction of the home, the district court granted respondent's motion for summary judgment. This appeal followed.

## D E C I S I O N

## I.

Summary judgment is appropriate when the admissible evidence presents no genuine issue of material fact and one party is entitled to judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). This court reviews summary judgment de novo to determine whether the district court properly applied the law and if genuine issues of material fact exist to preclude summary judgment. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). In doing so, any conflicting evidence is considered in the light most favorable to the party who opposes summary judgment. *Fabio*, 504 N.W.2d at 761.

Appellant challenges the district court's grant of summary judgment to respondent, arguing that summary judgment was inappropriate because evidence was presented demonstrating that the IRC "is subject to alternative interpretations as applied to the facts of this case." Specifically, appellant argues that the district court erred by (1) concluding that section R703.7 was the applicable section of the IRC; (2) refusing to consider or defer to the building official's interpretation of the IRC; and (3) refusing to consider expert testimony on the applicable standard of care. Appellant further argues that summary judgment was inappropriate because there are issues of material fact as to whether grade 15 felt is equivalent to two layers of Grade D paper.

## A.     Applicable section of the IRC

The State Building Code governs the construction, reconstruction, alteration, and repair of buildings. Minn. Stat. § 326B.101 (2014). The purpose of the code is to "provide basic and uniform performance standards, establish reasonable safeguards for health, safety, welfare, comfort, and security of the residents of this state and provide for the use of modern methods, devices, materials, and techniques which will in part tend to lower construction costs." *Id.* To effectuate this legislative purpose, the statute instructs the commissioner of labor and industry to establish by administrative rule "a code of standards for the construction, reconstruction, alteration, and repair of buildings, governing matters of structural materials, design and construction, fire protection, health, sanitation, and safety." Minn. Stat. § 326B.106, subd. 1 (2014).

In 2003, the "2000 edition of the [IRC] as promulgated by the International Code Council . . . [was] incorporated by reference and made part of the Minnesota State Building Code except as qualified by the applicable provisions of the Minnesota Rules, chapter 1300." Minn. R. 1309.010, subp. 1 (2003). It is undisputed that IRC § R703, entitled "Exterior Covering," applies here. Section R703.1 provides that "[e]xterior walls shall provide the building with a weather-resistant exterior wall envelope," and that this wall envelope "shall be designed and constructed in such a manner to prevent the accumulation of water within the wall assembly by providing a water-resistive barrier behind the exterior veneer as required by [s]ection R703.2." IRC § R703.1. Section R703.7, which is entitled "Stone and masonry veneer, general," requires that "[a]ll stone and masonry veneer shall be installed in accordance with this chapter," including Figure

5

R703.7. IRC § R703.7. Figure R703.7, entitled "Masonry Veneer Wall Details," depicts proper construction of masonry veneer walls. IRC § R703.7 (figure). The diagram points to the proper placement of "Building Paper or Approved Water-Repellent Sheathing," which references sections R703.2 and R703.7.4.[1] *Id.* Section R703.2 was amended by the Minnesota Department of Administration and is contained in the Minnesota Rules. *See* Minn. R. 1309.0703, subp. 1 (2003). This rule, entitled "Weather-resistant sheathing paper," provides: "A minimum of one layer of No. 15 asphalt felt complying with ASTM D 226 for Type 1 felt or other approved weather-resistive material shall be applied over sheathing of all exterior walls." *Id.*

In contrast to section R703.7, section R703.6 is entitled "Exterior Plaster." IRC § R703.6. This section, as amended by the Minnesota Department of Administration and contained in the Minnesota Rules, provides: "**Exterior Plaster**. Installation of these materials shall be in compliance with ASTM C 926 and ASTM C 1063." Minn. R. 1309.0703, subp. 3 (2003). Sections R703.6.1 and R703.6.2 are entitled "Lath" and "Plaster" respectively. *Id.* The latter provision states:

> Plastering with Portland cement plaster shall not be less than three coats applied over metal lath or wire lath and shall be not less than two coats when applied over masonry, concrete or gypsum backing. If the plaster surface is completely covered by veneer or other facing material or is completely concealed, plaster application need be only two coats, provided the total thickness is set forth in Table R702.1(1).

---

[1] R703.7.4 applies to anchorage of the veneer and is not relevant to this matter. *See* IRC § R703.7.4.

*Id.* When installing exterior plaster, the code requires that "[w]eather-resistant barriers shall be installed as required in [s]ection R703.2 and, where applied over wood-based sheathing, shall include a weather-resistive vapor permeable barrier with a performance at least equivalent to two layers of Grade D paper." *Id.*

Appellant argues that "[w]here methods of installation under the Exterior Plaster [IRC] are used, the entirety of the work is governed by the specific requirements of that section, including any specific weather restrictive barrier requirements." According to appellant, the manner in which respondent installed the siding involved a lath and scratch coat made of plaster that was then completely covered by a veneer. Appellant argues that because this method of installation falls into section R703.6.2, and that "provision makes no distinction between an application of plaster veneer or where the plaster is completely concealed by another veneer material," the district court erred by concluding that section R703.6 did not apply.

Appellant's argument involves the interpretation of the IRC; thus, our first task is to determine whether it is ambiguous. *See J.D. Donovan, Inc. v. Minn. Dep't. of Transp.*, 878 N.W.2d 1, 5 (Minn. 2016). An administrative rule is ambiguous "if it is unclear or reasonably susceptible to more than one reasonable interpretation." *In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 517 (Minn. 2007). In assessing whether a rule is ambiguous, we do not depend on a reading of words or phrases in isolation; rather we rely on the meaning assigned to the words or phrases in accordance with the apparent purpose of the regulation as a whole. *J.D. Donovan*, 878 N.W.2d at 5; *see also Troyer v. Vertlu Mgmt. Co/Kok & Lundberg Funeral Homes*, 806

N.W.2d 17, 24 (Minn. 2011) (stating that this court "construe[s] rules as a whole and words and sentences are understood . . . in the light of their context" (quotation omitted)). If a rule is unambiguous, we construe it "according to the common and approved usage of its words and do not disregard the rule's plain meaning to pursue its spirit." *Troyer*, 806 N.W.2d at 24.

A logical reading of the IRC demonstrates that the district court correctly concluded that section R703.7 controlled the installation of the stone veneer siding. Section R703 pertains to "Exterior Covering" and the installation thereof. A review of this section demonstrates that several parts of R703 focus on the installation of different types of exterior siding. For example, section R703.3 is entitled "Wood, hardboard and wood structural siding." IRC § R703.3. Similarly, section R703.5 is entitled "Wood shakes and shingles." *Id.* § R703.5. And, as stated above, sections R703.6 and R703.7 pertain to "Exterior plaster" and "Stone and masonry veneer," respectively. *Id.* §§ R703.6, R703.7. The categorization of different types of exterior siding under section R703 indicates that when a certain type of exterior siding is installed, it is required to be installed under the mandates of that subsection of the IRC.

In this case, it is undisputed that the type of siding installed by respondent consisted of stone veneer. This is distinct from plaster exterior siding such as stucco. *See Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/stucco (last visited on June 14, 2016) (defining "stucco" as "a type of plaster used for decoration or to cover the outside walls of houses"). When stone and masonry veneer siding is installed, the IRC requires that "[*a*]*ll* stone and masonry veneer *shall* be installed in accordance

8

with this chapter." IRC § R703.7 (emphasis added). This language is not only unambiguous, it is also mandatory. *See* Minn. Stat. § 645.44, subd. 16 (2014) (providing that "'[s]hall' is mandatory"). The mandatory language of section R703.7 demonstrates that section R703.6 cannot be applicable because the installation of stone veneer in accordance with R703.6 would conflict with the language of section R703.7 that requires all stone veneer to be installed in accordance with section R703.7. *See Miller v. Colortyme, Inc.*, 518 N.W.2d 544, 551 (Minn. 1994) (stating that "[a] statute is to be construed, whenever reasonably possible, in such a way as to avoid irreconcilable differences and conflict with another statute"). Therefore, the district court did not err by concluding that section R703.7 is the applicable section of the IRC.

## B. Building official

Appellant also contends that the district court erroneously refused to consider the building official's interpretation of the IRC. We disagree. Minnesota law provides that "[i]f a municipality has adopted or adopts the State Building Code, the responsibilities for code administration and enforcement are under the authority of its designated building office." Minn. Stat. § 326B.133, subd. 3a (2014). These building officials are "responsible for all aspects of code administration for which they are certified, including the issuance of all building permits . . . ." *Id.*, subd. 4 (2014). Local building officials have considerable discretion in enforcing code provisions, as well as interpreting unclear or ambiguous portions of the code. *State v. Arkell*, 672 N.W.2d 564, 568-69 (Minn. 2003).

Here, the building official's interpretation of the IRC is allegedly contained in handwritten notes on the building plans for the Costellos' house. These plans, which were attached as Exhibit A to appellant's memorandum in opposition to respondent's motion for summary judgment, contain a notation referencing "two layers of grade D building paper or [equivalent] required behind the stonework or brick." But the district court refused to "give any credence" to these notations because there was "nothing in the record to indicate who placed these comments on [the] document, when they were placed, any reason requiring this deviation from the Building Code, or whether this was ever brought to the attention of [respondent]."

Appellant argues that the building official's stamp "Reviewed for Code Compliance" demonstrates that he reviewed the plans and "approved the construction with the inclusion of the revision[s]." Appellant argues further that in light of the building official's considerable expertise in the field, the district court erred by refusing to consider and give deference to the building official's interpretation of the IRC. We disagree. As we determined above, the IRC is unambiguous. Because the IRC is unambiguous, its plain meaning is clearly discernible from its language. Thus, the district court was not required to consider or give deference to the building official's interpretation of the IRC. *See St. Otto's Home v. Minn. Dept. of Human Servs.*, 437 N.W.2d 35, 40 (Minn. 1989) ("No deference is given to the agency interpretation if the language of the regulation is clear and capable of understanding; therefore, the court may substitute its own judgment.").

## C. Expert testimony

Next, appellant argues that the district court erred by refusing to consider expert testimony on the issue of the applicable standard of care. Ordinarily, expert testimony is required to establish the prevailing standard of care and the consequences of departure from that standard. *City of Eveleth v. Ruble*, 302 Minn. 249, 254-55, 225 N.W.2d 521, 525 (1974). "When qualified expert opinion with adequate foundation is laid on an element of a claim, a genuine issue of material fact exists." *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 266 (Minn. 1992).

A review of appellant's arguments demonstrates that appellant is not claiming that expert testimony is necessary to establish that two layers of Grade D paper is the applicable industry standard. Instead, appellant repeatedly contends in its appellate submissions that the expert opinions pertain to "which particular [IRC] code provisions applied to respondent's work." But, as the district court determined, the IRC is unambiguous and clearly sets forth the applicable industry standard for installation of "all" stone and masonry veneer. *See* IRC § R703.7. Thus, the interpretation of the IRC is a legal issue, and expert testimony is unnecessary to determine the applicable standard of care under the IRC. *Compare City of Brainerd*, 827 N.W.2d at 755 (stating that when the statute is unambiguous, the court interprets the language according to its plain meaning without resorting to other principles of statutory construction), *with Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (stating that if a statute is ambiguous, factors set forth by the legislature may be considered for interpreting the statute). Therefore, because appellant's argument is that expert testimony is necessary to

11

determine the applicable section of the IRC—which is a legal issue—rather than whether respondent's installation of grade 15 felt failed to meet industry standards—which is a factual issue—the district court did not err by refusing to consider expert testimony with respect to standard of care. And because appellant failed to establish that respondent breached the applicable standard of care, the district court properly dismissed appellant's negligence action without considering expert testimony on causation. *See Lee v. State, Dep't. of Nat. Res.*, 478 N.W.2d 237, 239 (Minn. App. 1991) (stating that if an element of a negligence claim is not proved, the claim must be dismissed), *review denied* (Minn. Feb. 10, 1992).

### D.     Material used by respondent

Appellant further argues that because the experts disagree as to whether grade 15 felt is equivalent to two layers of Grade D paper, an issue of material fact exists that precludes summary judgment. But again, the IRC unambiguously states that grade 15 felt is the proper material to be used when installing "all" stone veneer. IRC § R703.7. It is undisputed that respondent used grade 15 felt in installing the stone veneer on the Costellos' home. As the district court found, although the experts disagree as to whether the grade 15 felt is equivalent to two layers of Grade D paper, the "issue is moot because the [IRC] did not require Grade D water resistant sheathing." Thus, the district court properly concluded that the issue need not be decided because respondent complied with the applicable IRC provisions.

In sum, the district court properly concluded that Section R703.7 was the applicable section of the IRC. And because the undisputed facts demonstrate that

respondent complied with the applicable section of the IRC, the district court did not err by granting summary judgment to respondent.

## II.

At the summary-judgment hearing, appellant asked the district court to accept the deposition transcript of Joel Johnson, which had not been filed with its motion papers. The district court denied the motion. Appellant argues that the district court's ruling was an abuse of discretion.

The Minnesota Rules of General Practice require the nonmoving party to respond to a dispositive motion by serving and filing any affidavits and exhibits on the opposing party at least nine days before the hearing. Minn. R. Gen. Pract. 115.03(b). This court reviews a district court's procedural and evidentiary rulings for an abuse of discretion. *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001).

Here, it is undisputed that the deposition transcript was not filed within the time limits set forth in Minn. R. Gen. Pract. 115.03(b). Because appellant did not timely file the deposition transcript, the district court did not abuse its discretion by refusing to consider it. Moreover, even if the district court abused its discretion by refusing to accept the untimely exhibit, appellant cannot establish that it was prejudiced by the ruling. Johnson's deposition testimony was offered to show his opinion as to the proper interpretation of the IRC. But, as discussed above, the interpretation of the IRC is a legal question due to its lack of ambiguity. Therefore, expert testimony was unnecessary, and the district court properly declined to consider expert testimony on the issue.

13

**III.**

Finally, respondent moved to strike the portions of appellant's principal brief and reply brief that cite to or rely on the portion of the summary-judgment hearing transcript for the "truth of the matters asserted" by the attorneys as to the content of the untimely Johnson deposition transcript. But the content of Johnson's deposition is not relevant to the issues in this appeal because the interpretation of the IRC is a legal issue that does not require the consideration of expert testimony. Because we do not rely on the challenged material contained in appellant's briefs, we deny the motion to strike as moot. *See Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007) (denying motion to strike as moot when court did not rely on material).

**Affirmed; motion denied.**